**S.A.V., Plaintiff-Appellant,**

v.

**K.G.V., Defendant-Respondent.**

No. 67189.

Supreme Court of Missouri,
En Banc.

April 15, 1986.

Dana Hockensmith, Carol Bader, Hillsboro, for plaintiff-appellant.

Paul H. Schramm, M. Harvey Pines, Mark S. Corman, Clayton, for defendant-respondent.

RENDLEN, Judge.

This appeal concerns Missouri's long-standing rule of interspousal immunity for tort actions, discussed at length in *Townsend v. Townsend*, 708 S.W.2d 646 (1986). This case differs from *Townsend* in that appellant charges her husband with negligence as well as an intentional tort. We now decide if spousal immunity should continue as a bar to negligence actions or whether it too should be removed as we have done for the intentional tort in *Townsend*. For reasons hereinafter discussed we hold that the archaic doctrine of spousal immunity is no longer available as a bar to negligence actions and the cause is remanded for reinstatement of plaintiff's (appellant's) petition.

The trial court dismissed appellant's petition against respondent in which it was alleged that during the marriage, respondent contracted *herpes praeputialis* and transmitted the disease to appellant. Appellant's three-count petition alleges that respondent willfully, recklessly and negligently transmitted the disease to appellant without informing her of his infection. Count III concludes with the allegation "[t]hat [d]efendant's negligence ... is the proximate and direct cause of [p]laintiff's contracting this disease, herpes, and thereby suffering injury and damage...."

The trial court ruled that the action was barred by the doctrine of interspousal immunity and the Court of Appeals-Eastern District transferred the cause after opinion to this Court for reexamination of existing law. Rule 83.01.

In *Townsend v. Townsend*, we considered § 451.290, RSMo 1978, as well as earlier case law and found that the rationale for the previously controlling decision of *Rogers v. Rogers*, 265 Mo. 200, 177 S.W. 382 (1915), was no longer persuasive, nor valid. We held that *Rogers* and subsequent cases following the *Rogers* rule were no longer to be followed.

It is generally argued that total abolishment of interspousal immunity will clog courts with trivial suits, disrupt family harmony and result in collusive claims. Respondent in the present case is particularly concerned that tort claims will be duplicative of property settlements and judgment obtained in dissolution of marriage proceedings.

The "flooding" of the courts argument collides with the requirement that courts must provide a forum to redress legitimate and compensable injuries. Further, that argument has been tested and apparently found wanting in thirty jurisdictions which have totally abolished the doctrine of interspousal immunity.[1] Particularly instructive is a case decided by the Supreme Court of New Jersey which first curtailed the doctrine with respect to negligent operation of motor vehicles, *Immer v. Risko*, 56 N.J. 482, 267 A.2d 481 (1970) and thereafter abolished the doctrine entirely. *Merenoff v. Merenoff*, 76 N.J. 535, 388 A.2d 951 (1978). Not only was the New Jersey Supreme Court undeterred in expanding its earlier decision, but, after eight years of experience in an area where potential for fraudulent claims is said to be highest, that court found the "adversary system ...

---

1. Alabama, Alaska, Arkansas, California, Colorado, Connecticut, Idaho, Indiana, Iowa, Kentucky, Maine, Maryland, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Washington, West Virginia, Wisconsin. *See Renfrow v. Gojohn*, 600 S.W.2d 77, 80–81 (Mo.App.1980); Annot. 92 A.L.R.3d 901 (Supp.1985).

equal to the task of screening out fraudulent claims." *Id.* 388 A.2d at 961.[2]

A similar argument is made that removal of the bar will lead to a rash of claims of the "unwanted kiss" and "rolling pin" variety.[3] It cannot be said it is beyond the capacity of our courts to examine and on a case-by-case basis define or adjust the duty of care required between married persons to accommodate the "give-and-take" of married life. It seems remarkably inconsistent to argue that connubial bliss will be disrupted to the breaking point by a spouse filing a tort action and in the same breath argue against removing the spousal immunity doctrine because such couples might unite for purposes of collusive claims.

It is particularly important to note that the bar to interspousal tort suits has been curtailed in a variety of cases in Missouri during the last fifty years with no apparent ill effect. Actions have been allowed for antenuptual torts, *Hamilton v. Fulkerson*, 285 S.W.2d 642 (Mo.1955), and against a husband's employer for the wife's injuries based on acts of the husband in the scope of his employment. *Mullally v. Langenberg Bros. Grain Co.*, 339 Mo. 582, 98 S.W.2d 645 (1936). The potential for fraud and collusion was not allowed to bar such actions.[4]

Finally, respondent contends that dissolution of marriage proceedings between the parties affords appellant an adequate avenue of redress. While there are distinct differences between the division of marital property between spouses and awards of damages for an injury, to the extent that conduct of the spouses is taken into account in division of marital property pursuant to § 452.330.1(4), RSMo Supp.1984, the dissolution decree might be admissible in the subsequent tort action subject to usual constraints of relevance, competence and with a careful eye to questions of causation and speculativeness of damages. The same may hold true for the dissolution proceeding if that action follows trial of the tort claim.

In conclusion, we join the majority of our sister states who have taken this step before us. *See generally Brown v. Gosser*, 262 S.W.2d 480, 484 [3] (Ky.Ct.App.1953); *Klein v. Klein*, 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70, 73 [3] (1962). Our holding today shall be applicable to all actions in which a final order, decree or judgment has not been entered as of the date of issuance of this opinion.

The judgment is reversed and the cause remanded to the trial court with direction to reinstate plaintiff's petition.

HIGGINS, C.J., and BILLINGS, J., concur.

BLACKMAR, J., concurs in separate opinion filed.

WELLIVER, J., concurs in part and dissents in part in separate opinion filed.

ROBERTSON, J., concurs in part and dissents in part and concurs in separate opinion concurring in part and dissenting in part of WELLIVER, J.

DONNELLY, J., dissents in separate opinion filed.

BLACKMAR, Judge, concurring.

I concur. I express no opinion as to how a court should rule if a spouse suffers the

---

**2.** In automobile cases, "the full glare of truth may be the best antidote for fraud." *Merenoff v. Merenoff*, 76 N.J. 535, 388 A.2d 951, 961 (1978). "Insurance companies might in appropriate circumstances reveal their status in the case, treating the covered defendant-spouse as a hostile witness in order to attack credibility and show that the husband and wife may be scheming to gain a recovery against the insurance company." *Id.*

**3.** These expressions are shorthand descriptions of those instances when a spouse allegedly subjects the other to minor physical abuse, possibly constituting trivial torts, and often were alleged as general indignities which, when accumulated, might be considered as grounds for divorce under the old "divorce" statutes. Section 452.-010, RSMo 1969 (repealed Laws of Mo.1973, p. 470).

**4.** It is also interesting that Missouri's legal system has functioned adequately without a Guest Statute, whose advent in other states has been in reaction to the possibilities for collusion inherent in the host-guest relationship.

termination of a dissolution action without mentioning a possible tort claim and then files suit.

WELLIVER, Judge, concurring in part and dissenting in part.

In the companion case to this one, the Court amply demonstrates that the historical justification for the doctrine of interspousal immunity is no longer justified. When judicially created law becomes unjust after the passage of time, courts can mold the common law to ensure a more fair and equitable administration of justice. In the words of Justice Cardozo, "I think that when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment." B. Cardozo, The Nature of the Judicial Process 150 (1921). *See also* Holmes, The Path of Law, 10 Harv.L.Rev. 457 (1897). One court, for example appropriately notes:

> One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his Interpretations of Legal History (1922) when he stated, 'Law must be stable, and yet it cannot stand still.'

*Hack v. Hack,* 495 Pa. 300, 433 A.2d 859, 868–69 (1981). The question, then, becomes a matter of policy of whether or not this Court should abolish the doctrine of interspousal tort immunity.

I agree with the principal opinion that both the majority of courts and commentators favor abolishing the doctrine. *See e.g.,* Gedid, Interspousal Immunity In Pennsylvania, 18 Duq.L.Rev. 475 (1980); McCurdy, Personal Injury Torts Between Spouses, 4 Vill.L.Rev. 447 (1959); Tobias, Interspousal Tort Immunity in Montana, 47 Mont.L.Rev. 23 (1985); Note, Liability in Tort for the Sexual Transmission of Disease: Genital Herpes and the Law, 70 Cornell L.Rev. 101 (1984) (in connection with this article, see *Long v. Adams,* 175 Ga. App. 538, 333 S.E.2d 852 (1985)); Annot., 92 A.L.R.3d 901 (1979); *Shook v. Crabb,* 281 N.W.2d 616 (Iowa 1979) (abolishing doctrine); *Ebert v. Ebert,* 232 Kan. 502, 656 P.2d 766 (1983) (permits suits for intentional torts); *Boblitz v. Boblitz,* 296 Md. 242, 462 A.2d 506 (1983) (abolishing doctrine and discussing the various arguments and jurisdictions); *MacDonald v. MacDonald,* 412 A.2d 71 (Me.1980); *Brown v. Brown,* 381 Mass. 231, 409 N.E.2d 717 (1980); *Imig v. March,* 203 Neb. 537, 279 N.W.2d 382 (1979) (abolishing doctrine); *Merenoff v. Merenoff,* 76 N.J. 535, 388 A.2d 951 (1978); *Shearer v. Shearer,* 18 Ohio St.3d 94, 480 N.E.2d 388 (1985); *Hack v. Hack,* 495 Pa. 300, 433 A.2d 859 (1981); *Freehe v. Freehe,* 81 Wash.2d 183, 500 P.2d 771 (1972). *But cf. Bowslaugh v. Bowslaugh,* 126 Ariz. 517, 617 P.2d 25 (1979); *Snowten v. U.S. Fidelity and Guarantee Co.,* 475 So.2d 1211 (Fla.1985); *Robeson v. International Indm. Co.,* 248 Ga. 306, 282 S.E.2d 896 (1981); *Cloud v. State Farm Mut. Auto. Ins.,* 440 So.2d 961, 962 n. 1 (La.App.1983) (not sue for negligence under statute); *Mathews v. State Farm Mut. Auto. Ins. Co.,* 471 So.2d 1223 (Miss.1985); *Counts v. Counts,* 221 Va. 151, 266 S.E.2d 895 (1980) (limited abolition). *See also* Mont. Code Ann. § 40–2–109 (1985) (only allowing suits for intentional torts). And, I agree that where there is an intentional tort committed by one spouse against the other there is no sufficient justification for retaining the doctrine. Marital harmony already has been disturbed, and the civil justice system

is capable of distilling collusive and insubstantial suits such as the "unwanted kiss" (battery) type of case. It may well be that a potential criminal charge stemming from the conduct alleged in the civil suit might inhibit one spouse from colluding with the other and claiming an intentional tort, lest they risk that the state might bring criminal charges against the other spouse. In a case such as *Townsend v. Townsend*, 708 S.W.2d 646 (Mo. banc 1986), that one spouse can be charged with a serious criminal offense is little comfort to the victim who suffers physical pain and endures medical expenses, which may or may not be covered under a health insurance plan.

· I cannot, however, agree that this Court and not the legislature should make the decision with respect to negligence actions between spouses. Appellant, in effect, asks this Court to make an empirical determination on the risk of or opportunity for collusive suits and the potential disruption in marital harmony. Without an adequate empirical basis either way, this Court should not so readily join the bandwagon; rather, the competing policy factors should be more thoroughly addressed or the matter should await legislative inquiry.

One of the ultimate losers in today's decision might prove to be the "family." One Justice, for example, observes:

> While it is currently fashionable to treat the harmony of the home lightly, the family nevertheless remains the bulwark of our society. Permitting husband and wife to sue each other for negligence is inimical to the very notion of harmony and trust so important to the marriage relationship.

*Shook v. Crabb*, 281 N.W.2d 616, 621 (Iowa 1979) (LeGrand, J., dissenting). When the spouses are true adversaries, the nature of the adversarial system might disrupt the peace and harmony of the marriage. Children will end up choosing sides; one spouse will not be able to talk with the other spouse about the case—albeit an *unlikely* possibility but *essential* if the system is to operate properly. And, to suggest that the same may happen in suits between friends is to overlook the difference between friendship and familial relations; only in the latter situation are the two *opposing* parties in constant contact and communication with one another, with a special and unparallel bond between them.

One should not so easily discount the opportunity for collusion that might accompany today's decision. If there is a collusive suit, surely marital bliss will not be harmed. The two parties, however, will become allies and not adversaries, with the ultimate adversary being the court system and, perhaps, an insurance carrier. "But non-adversary lawsuits that do not disturb the peace and harmony of the marriage encourage fraudulant and collusive claims, particularly where a third-party insurance company must pay any judgment awarded." *Raisen v. Raisen*, 379 So.2d 352, 355 (Fla.1979). I am not convinced that collusion will be so easily discovered.

> If [the husband wife] are *not* adversaries at all, our whole system is subverted. * *

The majority counters by saying that the law is equal to the task of discovering connivance by husband and wife. This again misses the point. The proud boast that the law gets at the truth is premised on the *adversary* process. Take away that premise, and the conclusion goes with it. What sort of "truth" surfaces when plaintiff and defendant desparately want the same result? How do courts avoid collusion if the defendant wins by losing? As was so appropriately stated in the dissent in *Hosko v. Hosko*, 385 Mich. 39, 187 N.W.2d 236, 240 (Mich. 1971), "this really results in a joint venture," with "the husband calling his insurance agent, the wife calling her lawyer and both entertaining visions of better days ahead."

*Shook v. Crabb*, 281 N.W.2d 616, 621–22 (Iowa 1979) (LeGrand, J., dissenting). I cannot agree with such a system of compensation, especially when any economic damages might already be covered under a health insurance policy.

**656**

Quite another problem lingers in the background when we allow suits between spouses for negligent conduct. In no other relationship, is there as great a chance for "negligent" conduct. The parties, husband and wife, are continually around one another and the opportunity of one accidentally harming the other is the greatest. Without intruding on the family relationship, how will the tort system draw the line between an "accident" and "negligent" conduct? The deterrent effect implicit in the tort system will serve as an external force shaping the family relationship; a force, it might be noted, premised on the conflict between plaintiffs and defendants and the shared desire for compensation rather than on other external forces, such as religion and morality. Has the law progressed so far that now twelve jurors can decide whether a husband should have been more careful when he brought home a vicious dog that he hoped to train but which in the meantime bite the husband's spouse?[1] The principal opinion suggests that this problem can be handled on a case-by-case basis. *See also Boblitz v. Boblitz,* 296 Md. 242, 462 A.2d 506, 522 (1983). I do not believe that this Court is yet in a position to decide whether this is progress or a potential quagmire, and I would either analyze the various policy implications at greater depth or would defer the matter over to the legislature.

Appellant's petition is in three counts, alleging negligence, recklessness and an intentional tort. In their brief before the court of appeals, appellant "asks only that this Court abrogate the immunity in cases of intentional torts between spouses or at the very least in cases of torts between spouses wherein th[e] conduct is extreme and outrageous." I would reverse on the count alleging the intentional transmission of the disease and would affirm the judgment of the trial court on the other counts.

DONNELLY, Judge, dissenting opinion.

I respectfully dissent for the reasons stated in *Townsend v. Townsend,* 708 S.W.2d 646 (Mo. banc 1986).

1. *See also* Great Moments in Domestic Relations, Fortune 114 (April 14, 1986).