John Alen **THONG**, Plaintiff/Appellant/ Cross–Respondent,

v.

**MY RIVER HOME HARBOUR, INC.,** Defendant/Respondent/ Cross– Appellant.

Nos. ED 74913, ED 74915.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 14, 1999.

Paul H. Gardner, Dallas M. Forrest, Jefferson City, for appellant.

Daniel Goldberg, St. Charles, for respondent.

CRANDALL, Presiding Judge.

Plaintiff, John Alen Thong, appeals from the judgment of the trial court directing verdicts in favor of defendant, My River Home Harbour, Inc., on his claims relating to defendant's failure to comply with certain statutory requirements prior to the sale of a boat after repossession. Defendant cross-appeals from the judgment of the trial court directing a verdict on one of the breach of contract counts of its counterclaim. We reverse and remand in part and affirm in part.

On August 29, 1989, plaintiff, John Alen Thong (hereinafter Thong), and defendant, My River Home Harbour, Inc. (hereinafter My River Home), entered into a "Retail Installment Contract" (hereinafter installment contract) for the sale of a cigarette boat, a high performance motor boat, to be used in Dubai, United Arab Emirates,

where Thong resided. The sale price of the boat was $130,000.00, which included freight to Dubai as well as a trailer. The terms provided for a down payment of $50,000.00 and monthly installment payments of $1,011.67 for the $80,000.00 balance financed through Mercury Marine Acceptance Corporation (hereinafter MMAC). The installment contract contained a provision whereby My River Home assigned to MMAC all its right, title, and interest in the contract "with recourse," which enabled My River Home to repurchase the contract from MMAC upon demand, make payments, and honor the installment contract in the event Thong failed to do so.

Thong and My River Home also entered into a "Purchase Agreement" which required that Thong provide as additional security a promissory note for the $80,000.00 balance due on the boat, a mortgage on two parcels of real estate, title insurance on the promissory note and mortgage, a marine casualty insurance policy, and a life insurance policy in the amount of at least $80,000.00. The purchase agreement and the promissory note were dated August 31, 1989.

When Thong returned to Dubai, My River Home refused to ship the boat to him because he did not comply with the purchase agreement with regard to providing the additional security. Thong made payments pursuant to the installment contract beginning in January 1990. When repeated attempts to resolve the dispute failed, Thong brought the present action against My River Home in April 1994. His petition sought return of the $50,000.00 down payment and the amount paid to the finance company (Count I); damages for conversion of the deposit (Count II); damages for wrongful retention of the boat under section 400.9–507, RSMo (1994)[1] for failure to comply with section

---

1. That statute provides in pertinent part:
   If the disposition has occurred the debtor or any person entitled to notification ... has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part [Part V]. If the collateral is consumer goods, the debtor has a right to recover in any event an

400.9–505, RSMo (1994) which required that the boat be disposed of within 90 days (Count III); and damages under section 400.9–507 for failure to comply with the notice requirements of section 400.9–504(3), RSMo (1994) (Count IV). In June 1994, Thong advised NationsCredit Financial Services Corporation (hereinafter NationsCredit), the successor to MMAC, that My River Home had never delivered the boat to him and that he would no longer make payments on the loan. Thong made the last payment in June 1994. With the $50,000.00 down payment, Thong had paid a total of $105,641.85 toward the purchase of the boat.

My River Home answered and filed a counterclaim. Counts I through V of its counterclaim sought damages for Thong's breach of the installment contract and breach of the purchase agreement. Count VI sought the reasonable value of services rendered and expenses paid "in storing, insuring, maintaining and winterizing the boat" during the time the boat was in My River Home's possession.

In November 1994, NationsCredit sent a letter to My River Home demanding immediate repurchase of the contract in the amount of $70,834.38. In April 1995, NationsCredit filed a motion to intervene in the present action. It sought damages from Thong for breach of contract and damages from My River Home for breach of assignment, breach of warranty, and replevin of the boat.

In April 1995, My River Home received an assignment of the installment contract from NationsCredit in return for paying $67,500.00. This transaction settled all claims by NationsCredit against My River Home and placed My River Home in the shoes of NationsCredit. In July 1995, My River Home sent a letter to Thong stating that he was in default in his payments on the boat. The letter provided in pertinent part:

> This is to notify you that you are in default in making your payments under the Retail Installment Contract ... which had been assigned to Mercury Marine Acceptance Corporation, now known as Nations Credit Financial Services Corporation, [and which now] has been assigned back to My River Home. If you do not cure the default within (10) days from the date of this letter, then the entire unpaid balance of the Retail Installment Contract becomes immediately due and payable. If you fail to cure the default and then fail to pay the entire unpaid balance of the Retail Installment Contract, My River Home will take possession of the boat and exercise its rights, including the sale of the boat, under the Retail Installment Contract.

Thong replied by letter on August 16, 1995. The letter reiterated his position that in view of My River Home's refusal to deliver the boat to him, he was entitled to the return of his down payment of $50,000.00, plus all monies paid to the finance company. He stated that he continued to pursue legal action against My River Home.

On July 15, 1995, My River Home legally repossessed the boat. Thereafter, it sent no written notice to Thong regarding the boat. On December 1, 1995, My River Home sold the boat at a private sale for $64,000.00. Thong did not learn of the sale until a short time before trial.

The case was tried to a jury. Prior to submitting the case to the jury, the trial court directed verdicts in favor of My River Home on Counts III and IV of Thong's petition and in favor of Thong on Counts I through V of My River Home's counterclaim. The court did not state the grounds for the directed verdicts. Thong voluntarily dismissed Counts I and II of his

---

amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price.

Section 400.9–507(1).

petition. Count VI of My River Home's counterclaim for quantum meruit was the only claim submitted to the jury. The jury returned a verdict in favor of Thong on that claim. The trial court entered judgment in accordance with that verdict.

■ Because all the points on appeal relate to the trial court's sustaining motions for directed verdicts, we consider the standard of review with regard to directed verdicts. In reviewing a directed verdict granted for a defendant, an appellate court views the evidence and permissible inferences most favorable to the plaintiff, disregards contrary evidence and inferences, and determines whether the plaintiff made a submissible case. *Schumacher v. Barker*, 948 S.W.2d 166, 168 (Mo.App. E.D. 1997). Directing a verdict is a drastic measure. *Id.* A presumption therefore is made in favor of reversing the trial court's judgment sustaining a motion for directed verdict unless the facts and inferences therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to a result. *Id.*

In his first point on appeal, Thong asserts the trial court erred in directing a verdict in favor of My River Home on his claim for My River Home's violation of the pre-sale notification requirements of section 400.9–504(3). The requirement of notice to the debtor after default in a secured transaction is set forth in section 400.9–504, which provides in pertinent part:

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale *or reasonable notifi-*

*cation of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. . . .*

(Emphasis added).

■ Initially, we note that the trial court stated at trial that the commercial reasonableness of the sale relieved My River Home of the duty to give Thong proper notice. We disagree. Commercial reasonableness and notice are distinct requirements. *Textron Financial Corp. v. Trailiner Corp.*, 965 S.W.2d 426, 431 (Mo. App. S.D.1998). Notice gives the debtor an opportunity to discharge the debt and reclaim the collateral, find another purchaser, or see that the sale is conducted in a commercially reasonable manner. *Id.* Conducting a commercially reasonable sale is designed to encourage the creditor to seek the most advantageous sale price and thus reduce the possibility and amount of any deficiency. *Id.* Thus, even if the debtor concedes that a commercially reasonable sale was held, a creditor must prove it gave notice to the debtor in its own right. *Id.*

We also note that Thong's argument that the notification was legally insufficient because it occurred prior to repossession of the boat is without merit. In this instance, the difference in the requirements between pre- and post-repossession notification, assuming without deciding that such a distinction exists, is irrelevant. Here, although My River Home acquired legal possession of the boat subsequent to notification, it never relinquished physical possession of the boat to Thong and at all times retained the boat in its care, custody, and control. Given the facts of this case, we decline to analyze the adequacy of the notice in terms of pre- and post-repossession notice requirements.

■ The purpose behind the statutory requirement of notice is to apprise the debtor of the details of the disposition so that the debtor may take appropriate action to protect his or her interest. *RWR,*

*Inc. v. DFT Trucking, Inc.,* 899 S.W.2d 875, 878 (Mo.App. S.D.1995). The official comment 5 to section 400.9–504 states, "[A]t a minimum [the notice] must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire."

■ Here, the letter sent to Thong did not serve the purpose of the notice required by section 400.9–504. The letter did not inform him that the boat would be sold either at a public sale at a given time and place or at a private sale. Rather, the letter only indicated that sale of the boat was one of the remedies available to My River Home and informed him that he must "cure the default within (10) days from the date of this letter" or My River Home would "take possession of the boat and exercise its rights, including the sale of the boat."

The options available to the secured party in disposing of collateral after default are very broad and permit the secured party to "sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." Section 400–9.504(1). The letter in the instant action did not inform Thong of the precise disposition My River Home intended to make of the boat. Although Thong was informed that a sale was possible, the letter gave him no way of knowing either whether a sale was actually planned or what type of sale My River Home intended to conduct. In order to protect his interest in the boat, to redeem if possible, and to insure the commercial reasonableness of the disposition, Thong should have been informed of the disposition My River Home intended to make of the boat. Without this basic information, Thong's ability to protect his interest in the boat was hampered and the purpose of the notice provision of 400.9–504(3) was not met. *See, e.g., Benton–Lincoln Credit Service, Inc. v. Giffin,* 48 Or.App. 559, 617 P.2d 662 (1980).

My River Home relies on *RWR, Inc. v. DFT Trucking, Inc.,* 899 S.W.2d at 875, to support its contention that the July 5 letter complied with section 400–9.504(3) in that the letter only needed to "indicate to the debtor via written correspondence the date after which the collateral will be sold." In *RWR, Inc. v. DFT Trucking, Inc.,* the letter giving notice informed the debtor that the trucks which had been repossessed would be sold on or after November 13, 1992. *Id.* at 878. In contrast to the notice letter in the present case, the letter clearly indicated that a sale was the method by which the secured creditor was going to dispose of the collateral. Thus, *RWR, Inc. v. DFT Trucking, Inc.* is not controlling.

■ My River Home also contends that Thong's August 16 reply letter effectively waived notice because it clearly indicated his intent to not produce a buyer or to take any action with regard to the boat. We disagree. Thong's letter merely reiterated his demand for the return of the monies paid toward the purchase of the boat and stated that he was continuing to pursue his legal action against My River Home. The letter, however, did not absolve My River Home of the duty to provide the requisite notice to Thong. In *Nelson v. Monarch Inv. Plan of Henderson, Inc.,* 452 S.W.2d 375, 378 (Ky.Ct.App.1970), the Kentucky court of appeals determined that although there was insufficient notice, the debtor either waived the right to notice or was estopped to claim a violation of the notice requirement by his actions in relinquishing the keys to the automobile and in executing title thereto. The court found that the record clearly indicated that the debtor had no further interest in the automobile and did not intend to bid on it. *Id.* The present action, however, is distinguishable from *Nelson* in that Thong did not voluntarily relinquish control or deliver the boat to My River Home, *see, e.g., Citizens State Bank v. Sparks,* 202 Neb.

661, 276 N.W.2d 661, 664 (1979), or otherwise indicate he had no further interest in the boat. Rather, Thong was engaged in an ongoing dispute with regard to My River Home's refusal to ship the boat. Thus, neither Thong's reply letter nor his actions supported a waiver and/or an estoppel theory.

Thong made a submissible case on his claim based on the lack of notice under section 400–9.504(3) and the trial court erred in directing a verdict on Count IV of his petition. Thong's first point is granted.

In his second point, Thong asserts the trial court erred in directing a verdict in favor of My River Home on his claim for My River Home's failure to comply with the requirements of section 400–9.505(1), RSMo (1994). That statute provides:

> If the debtor has paid sixty percent of the cash price in the case of a purchase money security interest in consumer goods or sixty percent of the loan in the case of another security interest in consumer goods, and has not signed after default a statement renouncing or modifying his rights under this part a secured party who has taken possession of collateral must dispose of it under section 400.9–504 and if he fails to do so within ninety days after he takes possession the debtor at his option may recover in conversion or under section 400–9.507(1) on secured party's liability.

Thong asserts that he paid 81.26 percent of the cash price of the boat and that My River Home took possession of the boat July 15, 1995 and sold it December 1, 1996, in contravention of the 90–day limit prescribed in section 400–9.505(1). At trial, the installment contract was admitted into evidence.

Section 400–9.505(1) provides protection to the debtor who has purchased consumer goods and has built up substantial equity in the goods by requiring the creditor to sell the goods within 90 days. Such a swift resale is intended to result in a greater sale price and surplus above which the debtor owes on the goods. *Kelley v. Commercial National Bank*, 235 Kan. 45, 678 P.2d 620, 623 (1984).

My River Home contends that section 400–9.505(1) is not applicable because Thong did not establish either the amount of equity in the boat or the portion of the payments attributed to principal and interest. We disagree. Thong met his burden and invoked section 400–9.505(1) when he adduced evidence that he paid more than 60 percent of the gross sales price of the boat. Assuming, without deciding, that interest is not included in calculating the cash price or the loan amount, the burden then shifted to My River Home to establish that the amount paid by Thong did not amount to 60 percent because some of the monies paid consisted of interest to the creditor. No such evidence was adduced.

Thong made a submissible case under section 400–9.505(1). The trial court erred in directing a verdict on Count III of Thong's petition. Thong's second point is granted.

In its cross-appeal, My River Home charges error in the trial court's directing a verdict on Count V of its counterclaim because the evidence established that Thong breached the terms of the purchase agreement, resulting in damages to My River Home. The damages claimed were the expenses of "storing, insuring, maintaining and winterizing the boat" and "moving the boat to higher ground during flooding."

Section 400.9–207, RSMo (1994) provides in relevant part:

(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. . . .

(2) Unless otherwise agreed, when collateral is in the secured party's possession

   (a) reasonable expenses (including the cost of any insurance and payment of taxes or other charges) incurred in the custody, preservation, use or

operation of the collateral are chargeable to the debtor and are secured by the collateral. . . .

Further, section 400.9–501(1), RSMo (1994) provides that "[w]hen a debtor is in default under a security agreement, a secured party has the rights and remedies provided in [Part V] and except as limited by [Part V] those provided in the security agreement." There is no provision in Article 9, Part V permitting My River Home to pursue a common law breach of contract action against a defaulting debtor. Although My River Home couched Count V of its counterclaim in terms of a breach of contract action, its claim was in essence a claim for expenses incurred when it was in possession of the boat, as authorized by section 400.9–207. My River Home was therefore required to bring its claim for expenses as an action for a deficiency under Article 9, Part V and not as a breach of contract action. The trial court did not err in directing a verdict on Count V of My River Home's counterclaim. My River Home's cross-appeal is denied.[2]

■ We discuss the issue of damages briefly only because My River Home argues that Thong is not entitled to recover any damages because he breached the purchase agreement when he failed to provide the additional security enumerated therein. We disagree. Here, both parties are in accord that the purchase agreement and the installment contract comprised one contract. Yet, the purchase agreement merely added additional security and did not alter the character of the installment contract which created a security interest in the boat. The existence of additional security does not change the requirement that a creditor comply with the notice re-

quirements of section 400.9–504(3). *See Cherry Manor, Inc. v. American Health Care, Inc.,* 797 S.W.2d 817, 822 (Mo.App. 1990) (additional security in the form of a deed of trust does not alter the "No Notice—No Deficiency" rule). Thus, the installment contract and the resultant security interest required My River Home to comply with Article 9, Part V.

That part of the judgment directing verdicts in favor of My River Home on Counts III and IV of Thong's petition is reversed and those counts are remanded to the trial court for action not inconsistent with this opinion. That part of the judgment directing a verdict in favor of Thong on Count V of My River Home's counterclaim is affirmed.

KENT E. KAROHL, Judge and MARY K. HOFF, Judge, Concur.

---

**2.** We do not consider whether the judgment entered on Count VI of My River Home's counterclaim could serve as the basis for the directed verdict on Count V either on the theory of election of remedies or on the theory of collateral estoppel. In view of our hold-

ing that directed verdict was proper because Count V was not a viable cause of action under Article 9, Part V, we need not address that issue. Further, the parties did not raise that issue on appeal.