Sarah E. RAY, Appellant,

v.

Stanley A. WISDOM, Respondent.

No. ED 85102.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 5, 2005.

G. William Wynne, St. Louis, MO, for appellant.

Michael P. Shea, Benicia Baker–Livorsi, Co–Counsel, St. Charles, MO, for respondent.

NANNETTE A. BAKER, Judge.

Sarah E. Ray ("Wife") and Stanley A. Wisdom ("Husband") were married on June 28, 1997 in St. Louis County, Missouri. On March 11, 2003, Wife filed a divorce petition in the Circuit Court of St. Charles County. In the first count of her petition, Wife sought a decree of dissolution of her marriage to Husband and alleged the requisite separation of the parties. In the second count, Wife sued Husband for "Tortious Infection" with a sexually transmitted disease.

Wife was diagnosed with genital herpes in August of 2002 by her treating physician, Dr. Hani Charles Soudah ("Dr. Soudah"). Wife had been married to Husband for approximately five years at that time. She testified that from approximately a

year prior to the marriage of the parties through the date of the separation in 2002, Wife had sexual relations only with Husband. Wife testified that she first experienced symptoms of genital herpes while she was still living with Husband. She testified that she first started exhibiting symptoms which, in her lay opinion, were attributable to genital herpes in March, 2002. She experienced swelling, pain and blisters in the vaginal area. Wife did not seek medical advice concerning the symptoms until her annual physical examination on August 12, 2002. She believed she had some sort of cyst or ingrown hair, and did not realize something was wrong until the third time the symptoms came back. Wife admitted that it is possible to have one or two genital herpes outbreaks before a person should recognize that something is wrong.

Since the initial diagnosis, Wife has had "flareups" of the disease every two to three months. Dr. Soudah prescribed *Famvir*, to be taken when she experiences symptoms. The "flareups" included lesions, pain and swelling, fatigue and headaches. The pain and discomfort have necessitated cancellation of appointments and other plans.

Wife also stated that she had difficulty discussing the disease with a man in whom she was interested. Instead, she told him that she was not interested in him "in that way". At the time of trial, she was still unable to tell a man that she has genital herpes, and that relations with her would involve risk. She sought out and began meeting with a therapist/counselor to help with these issues, incurring costs in the process.

Husband testified that, during his marriage to Wife, he had a sexual relationship with a female who was an employee of the United States Postal Service, where he also worked. He testified that the woman had never indicated to him that she had a sexually transmitted disease. Husband maintained that he did not knowingly give Wife genital herpes. Husband also testified that he did not know he had the disease until November 2003. He was alerted that Wife had the disease when she sued him. Then he was tested, and although he tested positive for the disease, as of the date of trial he testified that he had never had any outbreaks. Furthermore, Wife testified that she never saw any evidence that Husband had any outbreak of herpes during their time together.

Husband was questioned on cross examination regarding the possibility that he had experienced symptoms of genital herpes without realizing it. He answered that he had "so many medical conditions that they intertwine, I mean, you know, I spent two years in Vietnam, I was exposed to Agent Orange and I've got diabetes because of that. That thing alone makes you depressed and all kinds of other things on its own and you take in all the other medical conditions I got, its just I don't know." He stated that he has never discussed his herpes infection with a physician. Nor has he sought medical advice about how to avoid spreading the disease.

Both parties were sexually active before their marriage. As a result, Husband and Wife underwent premarital HIV testing, which was negative. Neither party was tested for any other sexually transmitted diseases when they got married in 1997.

Dr. Soudah testified on behalf of Wife. Dr. Soudah had been Wife's regular family physician since 1996. He is board certified in internal medicine. After he diagnosed Wife with genital herpes, Dr. Soudah advised Wife that the disease was transmitted only by sexual contact. He testified that it presents either on the skin or in the external genitalia. He also testified that

sometimes some patients have fevers, chills, fatigue, or a lymph node enlargement.

Dr. Soudah testified that, in his opinion, the incubation time of genital herpes can be from three to seven days and that the incubation period has been documented in "the literature" from one day to up to 26 days. He testified that it is possible for someone to infect another person even if they have not manifested any symptoms. He also stated that the herpes virus was incurable and sometimes people would not have symptoms but still be able to transmit the disease. He said that it was very unlikely for a person who never exhibited symptoms to transmit the disease to another person. He also testified that a person who has the virus would exhibit symptoms at some point. He stated that it was very unlikely that Wife had the disease before she got married but did not show symptoms until 2003. He testified, "So if she had no symptoms and she was not treated before, the likelihood that she had the disease is zero." He stated that most patients seek treatment initially and that was documented in "the literature."

At the conclusion of Wife's case, Husband moved for a directed verdict. Husband's motion for a directed verdict was sustained. Specifically, the court found that there was no evidence that Husband had symptoms. The court concluded there was no evidence that Husband knew or should have known that he had genital herpes, and thus had no duty to protect Wife from infection. This appeal follows.

Wife's first claim is that the trial court erred in granting Husband's Motion for Directed Verdict in that there was sufficient evidence put forth at trial to withstand Defendant's Motion for Directed Verdict. She also claims the trial court

also erred in denying her motion for new trial. In her second point, Wife asserts that the trial court erred in entering a Directed Verdict for Husband because the trial court required that Husband have actual knowledge of his infection, or that he admit to awareness of having symptoms of genital herpes, in order to establish a case for negligent transmission of the virus. We find that the trial court erred in sustaining Husband's Motion for Directed Verdict. We reverse and remand for a new trial.

Husband first asserts that the appeal should be dismissed because Wife's points relied on do not meet the requirements of Rule 84.04.[1] However, because Wife's arguments under these points are sufficient to inform this court and opposing party of the precise matters presented for review, this contention is denied. *See Adams v. Adams,* 108 S.W.3d 821, 832 (Mo.App. W.D.2003).

### Standard of Review

In reviewing a directed verdict granted for a defendant, an appellate court views the evidence and permissible inferences most favorable to the plaintiff, disregards contrary evidence and inferences, and determines whether the plaintiff made a submissible case. *Thong v. My River Home Harbour, Inc.,* 3 S.W.3d 373, 377 (Mo.App. E.D.1999). Directing a verdict is a drastic measure. *Id.* A presumption therefore is made in favor of reversing the trial court's judgment sustaining a motion for directed verdict unless the facts and inferences therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to a result. *Id.* If reasonable minds can draw different conclusions from the facts, a directed verdict is not proper. *Schaffer v. Bess,* 822 S.W.2d 871, 876 (Mo.App. E.D.1991).

1. All rule references are to Mo. Rules Civ. Pro.2004 unless otherwise indicated.

█ Each and every element essential to establish the liability of a defendant must be supported by substantial evidence. *Bond v. California Comp. and Fire Co.,* 963 S.W.2d 692, 696 (Mo.App. W.D.1998). In this regard, substantial evidence is competent evidence from which a trier of fact can reasonably decide the case. *Id.* A directed verdict is proper only if one or more of the elements of a cause of action are not supported by substantial evidence. *Id.*

### Preservation

█ Husband contends that the issues were not properly preserved for review and a plain error standard should be used. Husband asserts that Wife's post trial motion, which was titled "Memorandum in Support of Petitioner's Motion for New Trial and in the Alternative for Other Relief" was insufficient to preserve issues because it was not denominated "Motion for New Trial" as is required by Rule 78.07. Even though the motion was not denominated "Motion for New Trial," it did comport with Rule 78.07 in that it made allegations of error and requested a new trial be granted. It was sufficient to put the trial court on notice of the errors Wife was claiming.

█ Husband also claims that this motion was untimely in that the judgment was not a final judgment when this motion was filed. The original cause in this case contained multiple counts, including a tort count and a dissolution count. This court has previously recognized that in multi-count cases such as this one, disposing of the tort count first is desirable so that the trial court can consider the evidence presented and the jury verdict on the tort count when deciding the dissolution count. *See, State ex rel M.D.K. v. Dolan,* 968 S.W.2d 740 (Mo.App. E.D.1998). General-

ly, a decision is not final if the decision or order disposes of less than all claims. *Avidan v. Transit Cas. Co.,* 20 S.W.3d 521, 523 (Mo. banc 2000). An appeal will only lie from a final judgment. Section 512.020;[2] Rule 74. However, under Rule 74.01, a judge may enter a judgment as to one or more, but fewer than all of the claims upon an express determination that there is "no just reason for delay" and terminate the action as to that claim.

█ However, even when the trial court certifies its judgment as final for purposes of appeal, the trial court's determination is not conclusive and this court must still decide whether the partial judgment actually qualifies as a final judgment. *D'Agostino v. D'Agostino,* 54 S.W.3d 191, 197 (Mo.App. W.D.2001). For purposes of Rule 74.01(b), the court must dispose of at least one entire claim. *Nicholson Const. Co. v. Missouri Highway and Transp. Com'n,* 112 S.W.3d 6, 10 (Mo.App. W.D. 2003). In this case, the court made an express finding in its Findings, Conclusions and Judgment that there is no just reason for delay. Furthermore, this claim was completely adjudicated and the trial court has resolved all issues as to all parties. Thus, we find that the partial judgment qualifies as a final judgment in this case.

In Wife's motion, in addition to requesting a new trial and asserting claims of error, the motion included, as alternate relief requested by Wife, a request that the court find a finding of "no just reason for delay," that the court granted. Husband contends that, until after the court entered a finding of "no just reason for delay," the judgment was not final, and a motion for new trial could not preserve for appellate review any issues contained therein. Husband reasons that Wife should be required to file the motion again after

---

**2.** All statutory references are to RSMo 2004 unless otherwise indicated.

the court entered the finding of "no just reason for delay" in order to preserve the issues set out in the motion for appellate review. We do not find this argument compelling.

Rule 78.04 requires only that a Motion for New Trial be filed *"no later than* thirty days after the entry of judgment." (emphasis added). It does not address what happens to a motion filed before the entry of final judgment. As support for his contention, Husband cites footnote 110 of *Elam v. Alcolac, Inc.,* 765 S.W.2d 42, 230 (Mo. App. W.D.1988). This language, dicta interpreting a law review article about Rule 74.01(b), does not seem to support Husband's argument. The footnote states, "the motion for new trial and other post judgment events do not commence to mature until the action is terminated as to all the claims and all the parties." This language *does not indicate that motions made* before the court has made a finding that there is no just reason for delay have no effect, but that they "do not mature" or do not become effective until the proper procedures which make the partial judgment appealable have been followed.

## Motion for Directed Verdict

Wife claims in her first point that the trial court erred in sustaining Husband's motion for directed verdict and in denying Wife's motion for a new trial in that the evidence was sufficient to withstand Defendant's motion for directed verdict. We agree.

In 1986, the Missouri Supreme Court struck down the previous doctrine of spousal immunity. *S.A.V v. K.G.V.,* 708 S.W.2d 651 (Mo. banc 1986).[3] The court found that spousal immunity was not a bar to a negligence action and permitted a spouse to bring a claim against the other for infection with a sexually transmitted disease. *Id.* at 653. The claim in *S.A.V.* was "that respondent willfully, recklessly and negligently transmitted the disease to Appellant without informing her of his infection." *S.A.V.* at 652. Later, this court held that such a claim could properly be brought as an additional count in a petition for dissolution of marriage. *See, Dolan,* 968 S.W.2d 740. The court stated that "a wife can sue her husband for giving her herpes." *Id.* at 745. In 2000, the Western District also considered a negligent transmission of herpes case in which the parties were not married. *Deuschle v. Jobe,* 30 S.W.3d 215, 218 (Mo.App.W.D.2000).

The court in *Deuschle* set out an examination of the elements of a negligent transmission of genital herpes case which aids us in analyzing this case. In Missouri, it has been long established that the elements of a negligence action are (1) a legal duty on the part of the defendant to conform to a certain standard of conduct to protect others against unreasonable risks; (2) a breach of that duty; (3) a proximate cause between the conduct and the resulting injury; and (4) actual damages to the claimant's person or property. *Id.* at 218. One has the legal duty to exercise reasonable care by disclosing a contagious venereal disease before entering into sexual relations with another. *Id.* at 218–219. In an action for a negligent transmission of a venereal disease, a person is liable *if he knew or should have known* that he was infected with the disease and failed to disclose or warn his sexual partner about this unreasonable risk of harm before engaging in a sexual relationship. *Id.* at 219. It is foreseeable that one's sexual partner is susceptible to the disease if the infected person is aware he has the disease or suffers symptoms of the disease. *Id.* Therefore, one who knows or should know that he or she is

**3.** This case extended the doctrine set forth in *Townsend v. Townsend,* wherein the court allowed an interspousal claim for an intentional tort. 708 S.W.2d 646 (1986).

infected with genital herpes is under a duty to either abstain from sexual contact with others, or at least to warn others of infection prior to having sexual contact with them. *Id.*

■ The trial court in this case determined that Wife did not present sufficient evidence for the jury to find that Husband knew or should have known that he had a sexually transmitted disease. However, we do not agree. At trial, Dr. Soudah testified that with an ongoing herpes infection, patients usually complain of fatigue. He added that sometimes they have symptoms such as fevers, chills, lymph node enlargement, discharge and lesions on the genitalia. He testified that incubation periods for the virus can generally be between three to seven days, but incubation periods from as few as one day to as many as 26 days also have been documented. He testified that it is very unlikely for a person to infect another person if they have never had symptoms. He also stated that one can carry the virus without manifesting symptoms and if one has a chronic disease, it is possible to transmit to the partner without having symptoms. When asked if it is possible to have the symptoms of fatigue, fever and chills, etc, without ever having any lesions, Dr. Soudah stated that it was very unlikely and "[a]lmost always the lesions are there." He also stated that if Wife was not treated before she got married the likelihood that she had the disease before she got married is zero.[4]

Husband testified that he did not have lesions. He testified that he had other illnesses, such as diabetes and Agent Orange exposure. He stated that if he had other symptoms, such as fatigue or fevers, he would attribute those symptoms to his previous illnesses. He also testified that the woman with whom he had an affair never informed him that she had the disease nor was he aware that she had any symptoms. Wife testified that she did not notice that Husband had any symptoms.

The trial court granted Husband's Motion for Directed Verdict after Wife presented her case because Wife failed to provide evidence from which the jury would be able to determine that Husband either knew or should have known that he had a sexually transmitted disease as is required under *Deuschle*. However, we find that Wife submitted sufficient evidence from which the jury could have determined that Husband knew or should have known that he had the disease. There was expert testimony to the effect that most people who have the disease experience symptoms. Dr. Soudah testified that a person who has the virus would exhibit symptoms at some point. He stated that most patients seek treatment initially and that was documented in "the literature."

He stated that it was very unlikely that Wife had the disease before she got married but did not show symptoms until 2003. He testified, "So if she had no symptoms and she was not treated before, the likelihood that she had the disease is zero." Wife testified that she did not have other sexual partners during her marriage, so it is a reasonable inference that Wife got the disease from sexual contact with Husband. Dr. Soudah stated that it was very unlikely for a person who never exhibited symptoms to transmit the disease to another

---

4. Husband seems to indicate, in the facts portion of his brief, that the testimony of Dr. Soudah was improper because Dr. Soudah was Wife's treating physician and "the transcript does not reflect" that he was testifying as an expert. Husband implies that Dr. Sou-
dah should not have been allowed to offer expert testimony. However, Husband did not raise this issue in his points relied on or the argument portion of his brief. Thus, we deem this issue abandoned. *See Luft v. Schoenhoff,* 935 S.W.2d 685 (Mo.App. E.D.1996).

person. From this, there is a reasonable inference that Husband, who transmitted the disease to Wife, experienced symptoms.

Husband admitted to having an extramarital affair. When Husband was asked if he experienced any symptoms, Husband did not deny that he may have had symptoms. Husband stated that if he had symptoms, he would have attributed them to other diseases he had. Husband testified that he never had lesions.

Resolution of the credibility of the witnesses and weight of the evidence is for the jury to determine. Thus, the jury should have been given an opportunity to weigh the testimony to determine if Husband should have known he had the disease. The jury could infer from the fact that Husband had an extramarital affair, from Dr. Soudah's testimony that most people have symptoms and seek treatment, and from Husband's statement that he may have had symptoms and attributed them to something else, that Husband should have known he had the disease. Alternatively, the jury may have believed that Husband should not have known he had the disease, because he claimed he never had lesions and he attributed any symptoms he was having to his other diseases. In this case, there were questions regarding witness credibility and the weight of the evidence. These questions should have been left to the jury. Point granted.

Because this point is outcome determinative, we do not need to address Wife's second point.

Reversed and remanded for new trial.

CLIFFORD H. AHRENS, P.J., and GLENN A. NORTON, J., concur.