### Antoinette AMOND, Plaintiff/Appellant,

v.

### RON YORK & SONS TOWING, Defendant/Respondent,

### Tim Carpenter, and Barbara Carpenter, Defendants.

### No. ED 92087.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 29, 2009.

Matthew H. Hearne, Hearne & Bendick LLC, St. Louis, MO, for appellant.

Ron York & Sons Towing, St. Louis, MO, pro se.

Tim and Barbara Carpenter, St. Ann, MO, pro se.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiff filed a lawsuit against defendants, a towing company and its owners, for conversion of her vehicle after defendants towed the vehicle at the request of law enforcement officials, sent plaintiff two defective notices of redemption, and thereafter refused to allow plaintiff to redeem her vehicle when she made demand and tendered proof of ownership and the costs to redeem. After a bench trial, the trial court entered judgment in favor of the towing company.[1] Plaintiff appeals.[2] We reverse the judgment because the undisputed evidence established conversion as a matter of law. We remand for a partial new trial on the issue of plaintiff's damages.

The facts are not disputed. Plaintiff, Antoinette Amond, a Texas resident, was the owner of a 2004 Jeep Cherokee. She allowed a friend in St. Louis, Missouri to borrow the vehicle for a couple of months. On December 21, 2006, law enforcement officials from St. Ann, Missouri, gave Ron York & Sons Towing (Ron York), a corporation with offices in Breckenridge Hills, Missouri, authorization to tow plaintiff's vehicle. On January 12, 2007, Ron York sent a notice letter dated December 26, 2006 via certified mail to plaintiff's home address in Texas. This letter was returned to Ron York marked "Unclaimed." Subsequently, Ron York sent another notice letter to plaintiff via certified mail on February 16, 2007. Both notices were admitted into evidence at trial. Except for the dates on the letters and total amount due, the notices were identical, and provided:

> This notice is sent to you by [Ron York] the lienor, to notify you that said lienor has possession of said motor vehicle as described below, and claims a lien for towing and/or storage fees on your vehicle. Vehicle was ordered towed by the above police department.
>
> [*The notice then provides the VIN number, license plate number, and a description of plaintiff's vehicle, as well as the date Ron York began storing the vehicle and the total amount due.*]
>
> To redeem the vehicle the cash sums are required to be paid the lienor for the

---

1. It also entered judgment in favor of the individual defendants on other grounds, which is not challenged in this appeal.

2. Defendant has not filed a respondent's brief.

labor and services performed plus storage fees and costs incurred for utilizing the enforcement procedures of this statute. You must make arrangements to redeem your vehicle within 30 days if your vehicle was towed from public property (authorized in section 304.155 and 304.575, RSMo) or within 60 days if your vehicle was towed from private property (authorized in section 304.157).

Title holders: You must act to protect your title

Lienholders: You must act to protect your title

Title holder: If you are no longer interested in this vehicle bring the title to our office, all charges due will be dropped. If no action is taken the title holder could be held liable for the deficiency after the vehicle is sold.

Lienholder: If the lien has been released, please send a notarized lien release on your company letterhead.

If you have any questions, please call the phone number listed above.

Plaintiff received the second notice on February 23, 2007. After receiving the notice, plaintiff contacted Ron York. The employee who answered the phone told plaintiff what she needed to bring to pick up the vehicle and that the cost to redeem the vehicle was $1,495. Plaintiff informed the employee that she would be traveling to St. Louis on Monday, February 26, 2007 to the pay the costs and to pick up her vehicle. Plaintiff arrived at Ron York's office on that Monday morning. At that time, Ron York had already submitted an application to obtain title to plaintiff's vehicle. After arriving at Ron York's office, plaintiff provided an employee of Ron York with her driver's license and the vehicle's registration in order to show proof of ownership. The employee then said that the cost to redeem would be $1,795. Plaintiff agreed and attempted to pay that amount. The employee called Barbara Carpenter, Vice President of Ron York, to come to the office. Ms. Carpenter refused to accept plaintiff's payment or to release plaintiff's vehicle, claiming that she had already applied for a title to the vehicle. Plaintiff left without her vehicle. Ron York subsequently received a salvage title for plaintiff's vehicle, which was issued on March 27, 2007. It sold the vehicle within the first several weeks after receiving the title.

Plaintiff filed a lawsuit against defendants, Ron York, and its owners, Tim Carpenter and Barbara Carpenter, for conversion, alleging that defendants wrongfully and unlawfully refused to deliver plaintiff's vehicle to her after she made demand upon defendants for the property. After a bench trial, the trial court entered an order in which it concluded that Ron York had obtained title to plaintiff's vehicle lawfully and in compliance with all applicable statutes and law, and that the individual defendants were acting at all times in their official capacities as officers and agents of Ron York. It entered judgment in favor of all defendants. Plaintiff appeals from the judgment in favor of Ron York, raising four claims of error.

## DISCUSSION

■ In a court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We review questions of law *de novo,* and we are not bound by and need not defer to the trial court's legal conclusions. *Collins & Hermann, Inc. v. TM2 Const. Co.,* 263 S.W.3d 793, 796 (Mo. App.2008); *Mullenix–St. Charles Props. v. St. Charles,* 983 S.W.2d 550, 555 (Mo.App. 1998).

## Conversion

In her first and second points, plaintiff contends that the trial court erred in ruling that Ron York (hereinafter defendant) did not convert her property because on the day that plaintiff appeared in defendant's office to redeem her vehicle, plaintiff was entitled to possession of the vehicle as the sole owner, and defendant did not have a right to retain possession of the vehicle because it failed to provide plaintiff with proper notice as set forth in section 304.156 RSMo (Cum.Supp.2006).[3]

"Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Bell v. Lafont Auto Sales*, 85 S.W.3d 50, 54 (Mo. App.2002). Conversion may be proved in one of three ways: (1) showing a tortious taking; (2) showing a use or appropriation by the defendant indicating a claim of right in opposition to the rights of the owner; or (3) showing a defendant's refusal to give up possession to an owner upon demand, even though the defendant's original possession of the property was proper. *Id.*; *Collins v. Trammell*, 911 S.W.2d 635, 637–38 (Mo.App.1995); *Northland Ins. v. Chet's Tow Service*, 804 S.W.2d 54, 56 (Mo. App.1991).

Here, plaintiff does not dispute that defendant was given proper authority to tow her vehicle pursuant to section 304.155.1(5)[4] and that, as a result, defendant was granted a lien against the vehicle for the reasonable charges for the towing and storage of the vehicle. *See* section 304.155.9.[5] "'When the initial taking is authorized, demand and refusal are necessary to the existence of a conversion claim.'" *Collins*, 911 S.W.2d at 638 (quoting *Kennedy v. Fournie*, 898 S.W.2d 672, 679 (Mo.App.1995)). It is undisputed that defendant refused to allow plaintiff to redeem her vehicle after she appeared at defendant's office and demanded the return of her vehicle. Thus, the only issue to be resolved is whether defendant was legally entitled to retain possession of plaintiff's vehicle after plaintiff made demand for her vehicle.

At trial, defendant argued that it met the notice requirements of section 304.156.1 when it sent plaintiff the first notice on January 12, 2007 and that plaintiff had thirty days from that date to redeem her property. It argued that because plaintiff failed to retrieve her property within the thirty-day period, and because defendant had already applied for title to the property at the time plaintiff sought to redeem her property, plaintiff lost her right to redeem the vehicle when she arrived at defendant's office on February 26, 2007.

---

3. All further references to chapter 304 are to RSMo (Cum.Supp.2006).

4. Section 304.155.1(5) provides:

> 1. Any law enforcement officer within the officer's jurisdiction, or an officer of a government agency where that agency's real property is concerned, may authorized a towing company to remove to a place of safety:
> (5) Any abandoned property for which the person operating such property is arrested for an alleged offense for which the officer is required to take the person into custody and where such person is unable to arrange for the property's timely removal.

5. Section 304.155.9 provides in pertinent part:

> Any person who removes abandoned property at the direction of a law enforcement officer ... shall have a lien for all reasonable charges for the towing and storage of the abandoned property until the abandoned property is voluntarily relinquished to the owner of the abandoned property or to the holder of a valid security interest of record.

Plaintiff's position is that defendant did not have a legal right to possess plaintiff's vehicle after plaintiff made her demand for the vehicle because the contents of defendant's first notice failed to comply with section 304.156.1, which, she argues, provided her with insufficient notice. We agree.

Section 304.156.1 requires a towing company to provide notice to the owner and any lienholder of abandoned property that is in the possession of the towing company before that towing company is allowed to apply for title to the property. The definition of "abandoned property" includes any vehicle removed from public or private property as provided in sections 304.155 and 304.157. Section 304.001(1). Plaintiff's vehicle falls within this definition because the vehicle was towed pursuant to section 304.155.1(5). Section 304.156.1 provides:

> Any towing company which comes into possession of abandoned property pursuant to section 304.155 or 304.157 and who claims a lien for recovering, towing or storing abandoned property shall give notice to the title owner and to all persons claiming a lien thereon, as disclosed by the records of the department of revenue or of a corresponding agency in any other state. The towing company shall notify the owner and any lienholder within ten business days of the date of mailing indicated on the notice sent by the department of revenue, by certified mail, return receipt requested. *The notice shall contain the following:*
>
> (1) The name, address and telephone number of the storage facility;
>
> (2) The date, reason and place from which the abandoned property was removed;
>
> (3) A statement that the amount of the accrued towing, storage and administrative costs are the responsibility of the

owner, and that storage and/or administrative costs will continue to accrue as a legal liability of the owner until the abandoned property is redeemed;

> (4) A statement that the storage firm claims a possessory lien for all such charges;
>
> (5) A statement that the owner or holder of a valid security interest of record may retake possession of the abandoned property at any time during business hours by proving ownership or rights to a secured interest and paying all towing and storage charges;
>
> (6) A statement that, should the owner consider that the towing or removal was improper or not legally justified, the owner has a right to request a hearing as provided in this section to contest the propriety of such towing or removal;
>
> (7) A statement that if the abandoned property remains unclaimed for thirty days from the date of mailing the notice, title to the abandoned property will be transferred to the person or firm in possession of the abandoned property free of all prior liens; and
>
> (8) A statement that any charges in excess of the value of the abandoned property at the time of such transfer shall remain a liability of the owner.

(Emphasis added.) After a towing company provides this notice, it must wait at least thirty days before it can submit an application to obtain title to the abandoned property. *See* section 304.156.7. If, after thirty days, the property is unredeemed and no arrangements have been made between the towing company and the owner or lienholder of the property for continued storage, the towing company may apply to the Director of Revenue to obtain title to the property. *Id.* Section 304.155.12 provides that a towing company may only sell abandoned property after it has complied

with the notification provisions of section 304.156.

■ Although both of defendant's notices were virtually identical, we confine our analysis to defendant's first notice because defendant submitted its application to obtain title to plaintiff's vehicle after mailing the first notice and relied on that notice at trial to establish plaintiff's thirty-day redemption period. Defendant's first notice failed to comply with section 304.156.1 in several respects. First, the notice failed to identify the place from which plaintiff's vehicle was removed as required by section 304.156.1(2). This omission is significant because the notice states, "You must make arrangements to redeem your vehicle within 30 days if your vehicle was towed from public property (authorized in section 304.155 and 304.575, RSMo) or 60 days if your vehicle was towed from private property (authorized in section 304.157)." Without including the location from which plaintiff's vehicle was towed, the notice made it impossible for plaintiff to know if she had 30 days or 60 days to redeem her vehicle.[6] In addition, the notice also failed to include a statement notifying plaintiff that she had a right to request a hearing to contest the propriety of defendant's towing or removal, as required by section 304.156(6), and failed to include a statement that informed plaintiff that title to her property would transfer to defendant if she did not redeem her property within 30 days from the date of mailing of the notice, as required by section 304.156.1(7).

■ A party seeking to deprive an owner of his or her property rights pursuant to a statute must, among other obligations, comply with the notice requirements contained in the statute. *See Valli v. Glasgow Enterprises, Inc.,* 204 S.W.3d 273, 277 (Mo. App.2006); *Thong v. My River Home Harbour, Inc.,* 3 S.W.3d 373, 377–79 (Mo. App.1999). In *Valli,* the plaintiff, a former owner of property sold at a tax sale, filed a lawsuit against the defendant, the purchaser, seeking to cancel the defendant's collector's deed because the defendant failed to provide the plaintiff with proper notice as required by section 140.405 RSMo (Supp. 2003) (section 140.405). On appeal, the court concluded that the defendant's notice failed to comply with the mandatory notice requirements of section 140.405 because the notice (1) failed to advise the plaintiff of her right to redeem the property and (2) incorrectly stated the length of time she had to redeem the property, which were explicitly required by the statute. 204 S.W.3d at 277. The court further concluded that the notice requirements of section 140.405 were mandatory and that the defendant's failure to comply with these requirements resulted in defendant losing all interest in the property. *Id.*

In *Thong,* a debtor filed a lawsuit against a secured creditor (the creditor) as a result of the creditor's alleged failure to provide proper notice as required by section 400.9–504 RSMo (1994), after the creditor repossessed and sold the debtor's boat. Section 400.9–504 RSMo (1994) required a secured creditor that had repossessed collateral from a debtor in default to provide the debtor with reasonable notification of the time and place of any public sale, or reasonable notification of the time after which any private sale or other disposition of the collateral was to be made. The court reasoned that the purpose behind this notice requirement

---

**6.** The statutory references in this sentence also make the notice confusing because section 304.575 was repealed in 1996 and section 304.157 does not specify the time frame within which an owner or lienholder must redeem abandoned property when the property is towed from private property.

was to "apprise the debtor of the details of the disposition so that the debtor may take appropriate action to protect his or her interest." 3 S.W.3d at 377. After reviewing the contents of the creditor's notice to the debtor, the court concluded that the notice failed to serve the purpose of section 400.9–504 because it failed to inform the debtor that his boat would be sold at a public sale and failed to indicate the time and place of the sale, and therefore, it hampered the debtor's ability to protect his interest in the boat. *Id.* at 378.

■ Similar to the notice statutes in *Valli* and *Thong*, section 304.156.1 requires that notice be sent to the owner of abandoned property before a towing company is allowed to apply for title to the property, and it further provides for what must be included in that notice. Because defendant's first notice did not comply with section 304.156, defendant did not have the right to apply for title to plaintiff's vehicle. As a result, defendant did not have a legal right to retain possession of plaintiff's vehicle after plaintiff proved her ownership of the vehicle and tendered to defendant its costs for towing and storage. Thus, by refusing to allow plaintiff to retrieve her vehicle after she made demand and tendered proof of ownership and the towing and storage costs, defendant converted plaintiff's vehicle. *See Collins,* 911 S.W.2d at 638; *Northland Ins.,* 804 S.W.2d at 56–57. The trial court erred in entering judgment in defendant's favor on plaintiff's conversion claim. Points one and two are granted.[7]

*Punitive Damages*

For her final point, plaintiff asserts that the trial court erred in failing to award plaintiff punitive damages. On remand, the trial court will have the opportunity to determine the actual damages in this case and may then consider whether punitive damages are warranted. *See Mackey v. Goslee,* 244 S.W.3d 261, 266 (Mo.App.2008).

*Conclusion*

■ Rule 84.14 provides: "The appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, in whole or in part, or give such judgment as the court out to give. Unless justice otherwise requires, the court shall dispose finally of the case." The trial court misapplied the law because the undisputed evidence showed conversion as a matter of law. In this situation, the proper remedy is to reverse and remand for a partial new trial on damages alone. *See Charles F. Curry and Company, v. Hedrick,* 378 S.W.2d 522, 536–37 (Mo.1964); *Sonoma Management Co., Inc. v. Boessen,* 70 S.W.3d 475, 482–83 (Mo.App.2002). The judgment of the trial court is therefore reversed and remanded for a partial new trial on the issue of plaintiff's damages.

CLIFFORD H. AHRENS, J. and NANNETTE A. BAKER, J., concur.

---

7. Our disposition of points one and two renders point three, which asserts another ground for reversal, moot.