**STATE of Missouri, ex rel. M.D.K., Relator,**

v.

**Honorable Colleen DOLAN, Judge, Circuit Court Of St. Louis County, Respondent.**

No. 73357.

Missouri Court of Appeals, Eastern District, Writ Division Five.

May 5, 1998.

Michael L. Lyons, Clayton, for appellant.

Michael B. Stern, St. Louis, for respondent.

GRIMM, Judge.

In this prohibition case, the underlying matter involves a two-count petition. One count seeks a dissolution of the marriage; the other seeks tort damages. Respondent judge granted husband's motion to sever the claims and set the dissolution count for hearing. At wife's request, we granted a preliminary order in prohibition, which we now dissolve.

### I. Background

In the first count of her petition filed in November 1996, wife alleges that the parties were married in 1989 and separated in October 1996. Further, she alleges that they do not have any children.

■ In addition, she alleges that the parties have accumulated marital property and debts, which she asks be divided in a fair and equitable manner. This count does not allege any marital misconduct.[1] Finally, wife seeks maintenance and restoration of her maiden name.

In the second count, wife alleges that the parties had sexual relations on September 26, 1996. Prior to that time, she alleges, husband "had been infected with an incurable sexually transmittable disease" and he knew it and did not tell her. Further, as a result of the September sexual relations, wife alleges she "contacted an incurable sexually transmittable disease" from husband. She claims that she has and will in the future incur medical expenses, pain, severe emotional distress, embarrassment, and anguish. She contends husband's acts were outrageous and seeks both actual and punitive damages.

The parties did not furnish us with a copy of husband's answer. In March 1997, husband filed a motion to sever the two counts. He contended that the combination of the "dissolution action with a civil jury trial is incompatible, inappropriate and should not be allowed." He stated five reasons: (1) the actions are covered by separate local rules pertaining to the disposition of jury versus non-jury cases, (2) the combination of the cases will delay disposition of the dissolution case beyond the Missouri Supreme Court guidelines, (3) there are different parameters of discovery and different matters in each case, (4) said "actions are not permitted to be assigned to a Family Court Judge pursuant to Local Rule 6.2," and (5) the combination would require a jury to hear aspects of the dissolution action which would be inadmissible in the tort action. Husband prayed that the court sever the two counts, reassign the tort action "to the general civil docket," and to proceed "promptly with the disposition of [the dissolution count] through the normal Family Court procedure."

On October 23, 1997, the trial court sustained the motion to sever. It did not state the basis for its decision, but gave wife seven days to seek a writ, which she did. While her application was pending, respondent judge set the dissolution count for hearing beginning February 24, 1998.

We issued our preliminary order in prohibition. Thereafter, the matter was briefed, argued, and submitted.

### II. Jurisdiction of a "Family Court" Judge

In their briefs, the parties discuss the jurisdiction of a judge who is assigned to St. Louis County's "Family Court." We address

---

1. Evidence of marital misconduct is admissible on the issue of distribution of marital property even though it is not pleaded. *McMillin v.* *McMillin*, 633 S.W.2d 223, 226 (Mo.App. E.D. 1982); *Stapleton v. Stapleton*, 637 S.W.2d 210, 211 (Mo.App. E.D.1982).

that issue first because confusion may exist as to the jurisdiction of such a judge.

Section 1 of Article V of the Missouri Constitution states that the judicial power is vested in the supreme court, the court of appeals, and circuit courts. The circuit courts are Missouri's trial courts. Section 14 of Article V provides that the circuit courts "shall have original jurisdiction over all cases and matters, civil and criminal."

Nevertheless, references are often made to other "courts" at the trial level, leaving the impression that they are something separate and apart from circuit court. For example, Chapter 211[2] is titled "Juvenile Courts;" Chapter 482 refers to "Small Claims Courts;" and Chapter 487 is titled "Family Courts." Although those "courts" are often referred to as such, the references are inaccurate and confusing.

■ As set forth in the opening section of Chapter 487, "division or divisions" of the circuit court are "designated" as "the family court." Section 487.010. "The family court" in St. Louis County, and in each other circuit having a "family court," is not a separate court. Rather, these other "courts" are simply designated divisions of the circuit court.

We recognize that the "family court" may differ from some other divisions of the circuit court. For example, it may have an administrative judge and may have commissioners to hear matters and make findings. Sections 487.010.3 and 487.020.1. These differences and a distinctive name, however, do not change the "family court" into a separate court. "The "family court" continues to be a division or divisions of the circuit court.

Associate circuit judges and circuit judges assigned to "family court" are judges of the circuit, not just of the "family court." By local court rule or by designation of the presiding judge, they may be initially assigned to hear only certain cases or classes of cases. *See* section 15.1 of Article V, "circuit judges of the circuit may make rules for the circuit," and section 15.3 of Article V, the "presiding judge shall have general administrative authority over the court and its divisions." Such is necessary and desirable for the orderly and efficient administration of justice within the circuit.

Respondent is an associate circuit judge. Section 17 of Article V authorizes associate circuit judges to hear "all cases, civil or criminal and all other matters as now provided by law for magistrate or probate judges and may be assigned such additional cases or classes of cases as may be provided by law." Following the adoption of this judicial article in 1976, associate circuit judges could only hear and determine "cases or classes of cases" enumerated in section 478.225 RSMo 1986. *State ex rel. Drienik v. Clifford,* 944 S.W.2d 266, 268 (Mo.App. E.D.1997).

However, in 1989, the General Assembly repealed section 478.225 and amended the introductory clause of section 478.220 RSMo 1978. Section 478.220 provides that circuit judges "and associate circuit judges may hear and determine all cases and matters within the jurisdiction of their circuit courts," subject to three restrictions, none of which are applicable here.

■ From these constitutional and statutory provisions, we conclude that respondent, as an associate circuit judge, has jurisdiction to hear and determine all cases within the jurisdiction of the St. Louis County Circuit Court, including both tort and domestic relations cases. Her jurisdiction to hear cases, however, does not end the inquiry. Respondent judge, as all other judges in the circuit, are subject to supreme court rules, local court rules, and the constitutional administrative authority of the presiding judge.

With these principles in mind, we turn to section 487.080. That section provides that "the family court shall have exclusive original jurisdiction" to hear and determine certain matters, including dissolution of marriage cases. The use of the term "jurisdiction" in this statute is unfortunate. As previously noted, the Missouri Constitution declares that the circuit court is Missouri's trial court. As such, the circuit court "shall have original jurisdiction over all cases and matters, civil and criminal." Section 14(a), Article V, Missouri Constitution.

---

**2.** All statutory references are to RSMo 1994 unless otherwise indicated.

■ The circuit court does not lose jurisdiction of the cases enumerated in section 487.080 when a "family court" is created. Rather, when family courts are established pursuant to Chapter 487, they are still a division or divisions of the circuit court. As such, the operation of the family court remains subject to the constitutional and statutory authority of associate circuit judges, circuit judges, and the circuit's presiding judge, as well as court rules. Nothing in section 487.080 deprives an associate circuit judge of the authority granted by section 478.220 to "hear and determine all cases and matters within the jurisdiction" of her circuit court. To the extent that section 487.080 purports to limit jurisdiction or place "exclusive original jurisdiction" of certain matters in the circuit court divisions comprising the family court, section 487.080 conflicts with sections 14(a), 15.3, and 17 of Article V and is unconstitutional.[3]

Section 487.090 adds to the confusion. This section states that under certain circumstances, criminal cases may be transferred to the family court. In addition, section 487.090.3 provides that if a tort action is properly joined with any of the traditional actions considered by a "family court," "the entire action shall not be within the jurisdiction of the family court but shall be assigned to and heard on a civil docket unless the parties stipulate and agree in writing that the matter may be retained in the family court."

■ As previously stated, the circuit court has constitutional jurisdiction to hear all civil cases. Needless to say, the constitutional authority given to circuit courts to hear all civil cases includes cases which contain different counts seeking different remedies, including tort damages and dissolution of marriage. Thus, a circuit court, or a division thereof, does not "lose jurisdiction" merely because a tort claim is joined with a dissolution count. As a result, section 487.090.3, which purports to restrict jurisdiction of certain types of cases from being heard by judges assigned to the family court, is also unconstitutional because it conflicts with sections 14(a), 15.3, and 17 of Article V.

We reemphasize that the circuit judges have the constitutional authority to "make rules for the circuit not inconsistent with the rules of the supreme court." Section 15.1, Article V. Further, the constitution gives the presiding judge of the circuit "general administrative authority over the court and its divisions." Section 15.3, Article V.

We have examined the Local Court Rules of the Twenty–First Judicial Circuit. Rule 6.2 provides that case assignments of certain cases and classes of cases, including dissolution of marriage actions, shall be made "in accordance with Family Court Administrative Judge Orders." Rule 6.3(1) provides that civil cases shall be assigned to judges sitting in the jury trial divisions. Nothing in those rules prescribe where a case, such as the one before us involving both dissolution and tort, should be assigned.

We have also examined the Missouri Supreme Court rules. Missouri Court Rules published by West Publishing Company does not contain any relevant rule. However, on February 25, 1992, the Missouri Supreme Court adopted Administrative Rule 14 pertaining to assignment of judicial personnel. That rule, in part, provides that each "presiding circuit judge is hereby authorized to assign any case or any class or classes of cases to any judge or division within the circuit." The rule contains two exceptions, neither of which are pertinent. The supreme court directed the State Courts Administrator to provide a copy of the order to each circuit presiding judge.

■ Thus, in the absence of a controlling supreme court or local rule limiting the assignment of this case or class of case, the presiding judge's constitutional general administrative authority permits that judge to

---

**3.** The supreme court has exclusive *appellate* jurisdiction in all cases involving the validity of a state statute. Section 3, Article V, Missouri Constitution. However, the court of appeals has concurrent jurisdiction with the supreme court on original remedial writs even though resolution of the writ requires a determination of the validity of a statute. Section 4, Article V, Missouri Constitution; *State ex rel. Coffman v. Crain,* 308 S.W.2d 451, 454 (Mo.App. S.D.1958); *State ex rel. Jordon v. Mehan,* 597 S.W.2d 724, 726 (Mo.App. E.D.1980).

determine where the case should be assigned. On its face, the assignment of both counts of this case to the respondent judge appears proper.

### III. Various Considerations

▮ Rule 66.02 authorizes a trial court, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," to order a separate trial of the claims. When severance is granted, that decision will not be disturbed unless this discretion is abused. *State ex rel. Sago v. O'Brien*, 827 S.W.2d 754, 755 (Mo.App. E.D.1992). Discretionary rulings are presumed correct and an abuse of discretion occurs only when the ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice." *Id.*

▮ Moreover, appellate courts are reluctant to issue the extraordinary writ of prohibition except "where a clear right" to it exists. *State ex rel. Lahammer v. Franklin*, 756 S.W.2d 956 (Mo.App. S.D.1988). Courts "should employ the writ judiciously and with great restraint." *Derfelt v. Yocom*, 692 S.W.2d 300, 301 (Mo.banc 1985). A writ should issue only "when the facts and circumstances of the particular case demonstrate unequivocally that there exists an extreme necessity for preventive action." *Id.*

Prior to April 15, 1986, wife could not have maintained a tort action against husband. Such actions were barred under the doctrine of interspousal immunity for tort claims. However, on that day, the Missouri Supreme Court handed down two opinions which abolished that immunity, *Townsend v. Townsend*, 708 S.W.2d 646 (Mo.banc 1986) and *S.A.V. v. K.G.V.*, 708 S.W.2d 651 (Mo. banc 1986). *S.A.V.* is particularly significant.

In that case, the wife filed a three-count petition against the husband, alleging negligence, recklessness, and intentional tort. *Id.* at 656 (Welliver, J., concurs in part and dissents in part). She alleged the husband transmitted herpes to her without informing her of his infection. *S.A.V.*, 708 S.W.2d at 652.

Among other arguments, the husband contended that dissolution proceedings afforded the wife an adequate avenue of redress. *Id.* at 653. The supreme court suggested that "when a spouse allegedly subjects the other to minor physical abuse, possibly constituting trivial torts," such claims could be disposed of in the dissolution proceeding. *Id.* at n. 3.

However, where as in *S.A.V.*, the alleged misconduct is substantial, the *S.A.V.* court recognized a separate tort claim. In such situations, there are "distinct differences between the division of marital property between the spouses and awards of damages for an injury." *S.A.V.*, 708 S.W.2d at 653.

Then, in *dicta*, the court said that "to the extent that conduct of the spouses is taken into account in division of marital property pursuant to section 452.330.1(4), RSMo Supp. 1984, the dissolution decree might be admissible in the subsequent tort action subject to usual constraints of relevance, competence and with a careful eye to questions of causation and speculativeness of damages. The same may hold true for the dissolution proceeding if that action follows trial of the tort claim." *Id.*

▮ From *S.A.V.* we learn that a spouse is not barred from bringing a tort action against the other spouse. In particular, a wife can sue her husband for giving her herpes. Although not an issue in that case, in *dicta*, the opinion seems to infer that neither res judicata nor issue preclusion would be a bar to a subsequent dissolution proceeding in which the marital conduct of the parties would "be taken into account in division of marital property." *Id.* Also, by way of *dicta*, *S.A.V.* implies that either the tort case or the dissolution proceeding could be tried first. *Id.*

Neither party has referred us to any Missouri case which has ruled that consideration of marital conduct in a dissolution proceeding precludes consideration of that conduct in a subsequent tort action. Or, if the tort action is tried first, that res judicata or issue preclusion bars consideration of that conduct by the dissolution court in distributing marital property and awarding maintenance. Nor has our independent research disclosed any.

Other states have considered this issue and have recognized some of the many problems presented. We mention two cases. In *Noble v. Noble*, 761 P.2d 1369 (Utah 1988), the husband shot the wife, leaving her totally and permanently disabled. *Id.* at 1370, 1372. The husband filed a divorce case and the wife counterclaimed for divorce. The wife also filed a separate tort action against husband. The divorce case was tried first, and the trial court awarded the wife a divorce. In addition, it "expressly took into account [the wife's] increased living expenses and decreased earning ability resulting from the disabilities caused by the shooting." *Id.* at 1370.

However, on the tort action, a trial judge dismissed it on the basis of res judicata. *Id.* The parties appealed both cases and the appeals were consolidated.

■ At the outset of the opinion, the Utah Supreme Court noted that the issues on appeal "would not have arisen and the resolution of both cases would have been greatly expedited had the tort case been tried before the divorce action." *Id.* at 1371. It strongly suggested that procedure to avoid "significant concerns if a fact question with respect to which a party has requested a jury and is entitled to a jury verdict is first decided by a judge in an equitable proceeding." *Id.*, n. 4.[4]

The Utah court then considered the divorce appeal and affirmed it. In its decree, the trial court had recognized the wife's need for present and future support and acknowledged the husband's inability to provide sufficient alimony. To overcome this deficiency, it awarded the wife additional property. *Id.* at 1373. On appeal, the Utah Supreme Court remanded the divorce case back to the trial court with directions that it make findings of sufficient specificity to enable the judge trying the tort action to avoid duplicate compensation. *Id.* By so doing, the wife would not receive a double recovery.

The Utah court then considered the tort appeal. It denied that res judicata (claim preclusion) applied because it only applies to "claims that actually were or could and should have been litigated in the prior action." *Id.* at 1374. Under Utah law, tort claims should not be tried as part of a divorce action and therefore claim preclusion was inapplicable. *Id.* The court said that once the findings in the divorce case stated the specific elements of loss or injury considered in the dissolution case, the judge presiding over the tort case could "structure the tort case so as to avoid duplicate compensation." *Id.*

Also in the tort case, it should be noted that the wife argued that the husband should be precluded from relitigating the specific finding the trial court made in the divorce action that he intentionally shot her. *Id.* The Utah court agreed, saying the "policies behind the doctrine of res judicata would be ill-served by allowing" the husband to force the wife to retry that issue. *Id.* at 1375.

We turn to the other case, *R.A.P. v. B.J.P.*, 428 N.W.2d 103 (Minn.App.1988). In that case, the wife knew before the marriage that she had herpes. She and the husband had premarital sexual relations. The husband learned before the marriage that he had herpes, however, he did not learn that his wife had herpes until after the marriage. She did not dispute that he caught herpes from her. *Id.* at 104.

The husband filed a dissolution proceeding. While it was pending, he filed a tort action against her alleging she intentionally infected him. *Id.* In the dissolution case, the trial court specifically noted that the tort action was pending. It stated in the decree that, because the acts or omissions occurred before the marriage, it would be inappropriate to consider that conduct in apportioning the property. *Id.*, n. 1.

After the marriage was dissolved, the trial court granted summary judgment on the tort

---

4. Missouri has "an extremely strong public policy" in favor of the right to trial by jury. *Attebery v. Attebery*, 507 S.W.2d 87, 93 (Mo.App. W.D. 1974). "Hardly any right is more firmly rooted in our law" and "trial by jury should be jealously guarded by the courts and any curtailment should be scrutinized with utmost care." *Id.* Also, as indicated, the General Assembly expressed a preference that actions involving tort and dissolution counts be tried "on a civil docket." Section 487.090.

action, ruling that "the basic gist of many of the issues" were "covered" in the dissolution action and thus barred. *Id.* at 105. The appellate court disagreed. It held that since the issue was not litigated in the dissolution proceeding, issue preclusion was not applicable. *Id.* at 105.

We mention these two cases to point out a few of the potential problems a trial judge should consider when faced with claims for marital torts and dissolution. This non-inclusive list includes (1) the right to a jury trial on a substantial tort claim and the lack of such a right for dissolution cases; (2) the effect or extent of the effect, if any, of the doctrines of issue preclusion (collateral estoppel) and claim preclusion (res judicata); (3) the necessity for specific findings of fact on the financial consideration the trial court gives for marital misconduct; and (4) the just division of marital property and award of maintenance, including consideration of marital misconduct, in the dissolution proceeding, as well as possible damages for the tort without a double recovery, double payment, or lack of adequate payment.

In addition, the "distinct differences" between the division of marital property and an award of damages for an injury must be kept in mind. *S.A.V.*, 708 S.W.2d at 653. Also, Missouri's strong public policy in favor of the right to jury trial must be considered. *Attebery*, 507 S.W.2d at 93.

Returning to the case before us, the alleged conduct of husband, if proven, would be a factor for the trial court to consider in dissolving the marriage. In addition, that conduct would be considered in the tort count.

Because husband's alleged conduct would be admissible in both counts, wife argues that if the dissolution count is heard first, either claim preclusion or issue preclusion could prevent her from litigating her tort count. In his brief, husband says "it is clear why [wife] is concerned." He contends that all of the elements of issue preclusion are met as set forth in *Vinson v. Vinson*, 725 S.W.2d 121 (Mo.App. E.D.1987).

Therefore, husband suggests that wife should be required to make an election to avoid issue preclusion or a double recovery. We reject the suggestion. First, the holding in *S.A.V.* recognizes the differences between a division of marital property and an award of damages and permits both actions. Second, we are unaware of the extent of the parties' marital property. If that amount is limited, and if wife prevails on her allegation of misconduct, wife might not be made whole if the dissolution count is tried first. In such a situation, the trial court could award her all of the marital property and still not adequately compensate her for the tort damages she sustained. On the other hand, if the tort count was tried first, no such limitation on damages exists.

Judicial economy and the parties would best be served if one judge heard both counts rather than one judge hearing one count and another judge the other. By so doing, the evidence of marital misconduct would only have to be presented once. Further, if the tort count was heard first, some of the previously mentioned problems could be eliminated. In addition, the trial judge could consider the evidence presented on the tort count and the jury's verdict when deciding the dissolution count.

We recognize that the family court concept is relatively new in Missouri. If we were to lay down specific procedural rules for the disposition of this case, some might say we are throwing a "monkey wrench" into the operation of the family court. That is not our intent. Rather, we believe that the family court concept has sufficient flexibility to meet the challenge of cases such as this without unduly hampering its activities and without violating the fundamental rights of the parties to have a jury hear the tort claim.

At this time, we exercise our discretion and decline to make the preliminary order permanent. Thus, we dissolve the preliminary order.

SIMON, P.J., and RHODES RUSSELL, J., concur.