Susan Beth DAHN, Appellant,

v.

Marcus Dewitt DAHN, A–1 Alarms, Inc. and First Community Bank, Respondents.

No. WD 71626.

Missouri Court of Appeals, Western District.

June 30, 2011.

Patrick R. Miller, Overland Park, KS, for appellant.

Anita I. Rodarte, Kansas City, MO, Rebecca L. Leonard, Lee's Summit, MO, Kelly H. Rose, Odessa, MO, and Gary Steinman, Gladstone, MO, for respondent.

Before: ALOK AHUJA, P.J., and VICTOR C. HOWARD and GARY D. WITT, JJ.

ALOK AHUJA, Judge.

The marriage of Susan and Marcus Dahn was dissolved in December 2006. Ten months later, in October 2007, Susan Dahn ("Wife") commenced this action in the circuit court, alleging that prior to the dissolution Marcus Dahn ("Husband") had misappropriated certain checks made payable solely to Wife, which constituted her shareholder distributions from their closely-held corporation, A–1 Alarms, Inc. In the present action Wife asserts claims for conversion and breach of fiduciary duty against Husband, claims for negligence and breach of fiduciary duty against A–1, and a claim for conversion against First Community Bank (the "Bank"), the financial institution at which Husband deposited Wife's distribution checks. The circuit court granted summary judgment to all of the defendants. Because we conclude that the claims against Husband and A–1 are barred by *res judicata,* and that Wife cannot claim conversion against the Bank because she did not receive delivery of the checks Husband allegedly misappropriated, we affirm.

### Factual Background

Husband and Wife were married from July 1, 1977 until the dissolution of their marriage on December 19, 2006. During their marriage Husband and Wife were the sole shareholders of A–1, a subchapter S corporation, with Husband owning 65% of A–1's stock and Wife the remaining 35%. Husband was President of A–1 and managed the business.

Based on her ownership interest Wife was entitled to 35% of all distributions made by A–1. Between July 22, 2000 and January 17, 2003, Husband caused A–1 to issue twenty-three distribution checks made payable to Wife, totaling $235,200. Husband executed each of the checks on A–1's behalf. Although the checks were made payable solely to Wife, they were never delivered to her. Instead, Husband admits that he endorsed each of the checks with Wife's signature (placing his own signature below hers), and deposited them into personal accounts he maintained at the Bank.

Wife initially separated from Husband and filed for dissolution of marriage in 2002. Husband and Wife reconciled during the summer of 2003, and Wife dismissed the original dissolution action in October 2003. On September 23, 2005, however, Wife again filed for dissolution.

Wife alleges that she first learned of the existence of the twenty-three distribution checks during discovery in the second dissolution action, when Husband was required by the court to produce copies of the cancelled checks and account statements. Wife deposed Husband in the dissolution action concerning the distribution checks, and also took a deposition of a Bank employee concerning the checks.

Following her discovery of the twenty-three checks, Wife filed a Second Amended Petition for Dissolution of Marriage on October 26, 2006. The Second Amended Petition named A–1, as well as two other closely-held entities, as Third–Party Respondents, alleging that the Third–Party Respondents "are necessary parties to this action for complete relief to be granted."

Wife's Second Amended Petition contained detailed allegations concerning Husband's alleged misconduct in connection with A–1's affairs and assets. Thus, the Second Amended Petition alleged that Husband had "seized complete control of A–1," "frozen Petitioner from all corporate and business activities, operations and assets" of A–1, "deprived Petitioner of access to the income generated by [A–1's] business operations," and had failed to provide Wife with access to A–1's books and records, or to full information concerning its operations. The Petition also alleged that "Respondent and [A–1] have engaged in ultra vires acts that are in violation of the Bylaws of . . . A–1 Alarms, Inc., . . . and in violation of the laws of the State of Missouri[,] which have improperly and illegally diverted corporate assets for the sole benefit of Respondent."

Wife's Second Amended Petition enumerated numerous specific actions by Husband, "acting individually and as President and majority shareholder of [A–1]," which had misused or misappropriated company assets. In particular, the Second Amended Petition alleged that Husband "forged Petitioner's name on checks and retained funds in excess of $235,000.00 for his personal use." In the current lawsuit Wife acknowledged that this allegation referred to the same checks that are at issue in this case.

Wife's Second Amended Petition further alleged that,

For a complete, fair and equitable division of the marital estate and for complete relief to be granted, justice requires that the funds improperly and illegally diverted from Petitioner be restored to her and that a full, complete and independent certified audit of the financial affairs of Respondent and Third–Party Respondents, the financial statements, income statements and the fees, expenses, compensation or other sums paid to Respondent from January 2000 through present be performed at the expense of Respondent, and for Respondent and Third–Party Respondents to be enjoined from converting, squan-

dering, wasting, diverting, disposing of or otherwise interfering with property, monies, credits, choses [sic] in action or other such assets to which Petitioner is entitled.

Trial in the dissolution case was scheduled to begin on November 1, 2006. On the day of trial, however, the parties informed the court that they had reached a settlement. Both Husband and Wife provided sworn testimony on November 1 describing the terms of their agreement. Neither party's testimony refers explicitly to the allegations of the Second Amended Petition concerning Husband's alleged misappropriation of money and property from A–1 or the other Third–Party Respondents. However, in her testimony Wife acknowledged that under the terms of the settlement Husband was being awarded sole ownership of the bank accounts into which the distribution checks had been deposited, and that Husband "would no longer be prohibited from spending the monies in those accounts," and that she was "waiving any claim that [she] previously had to those monies." Wife also testified to her understanding that she would be receiving a total of $600,000 in exchange for her interest in A–1. Among the other features of the parties' settlement, Wife testified that she was waiving any claim for maintenance, and that she had agreed, for purposes of the Form 14 child-support calculation, to the imputation of income to her in excess of what she was actually earning.

At the conclusion of the testimony, the court made oral findings that the parties' marriage was irretrievably broken and therefore dissolved, and that the parties' proposed settlement terms were fair and reasonable, and in the best interests of their sole remaining unemancipated child. The court closed the hearing by observing that Husband and Wife had "been well represented by both attorneys," and that

the parties' attorneys had "managed to address all the issues in a very professional and complete way," even though the court recognized that "[y]ou may not have gotten everything you want, I doubt you did, either one of you."

The circuit court entered a Judgment of Dissolution of Marriage memorializing the parties' oral settlement agreement on December 19, 2006. The Judgment recited that, on November 1, 2006,

> Petitioner and Respondent announced to the Court that they had entered into an oral agreement on all issues and that Petitioner's motion for restraining order, the appointment of a receiver, attorney fees and costs filed on October 6, 2006, was moot. Evidence was heard and this cause was submitted to the Court upon Petitioner's Second Amended Petition for Dissolution of Marriage filed on October 26, 2006....

The Judgment recited that the parties' filings had "fully set[ ] out all of the property owned by Petitioner and Respondent and all of the debts owed by Petitioner and Respondent," and that "Petitioner and Respondent agreed to divide their marital property and marital debts in their oral Marital Settlement Agreement and the Court finds that said division of marital assets and marital debts is fair, reasonable and equitable and not unconscionable." As recited by the parties in their testimony on November 1, 2006, the Judgment awarded to Husband the stock of A–1, and ownership of the bank accounts into which the twenty-three distribution checks had been deposited. The Judgment makes no explicit reference to Wife's claim that Husband had misappropriated her distribution checks from A–1.

The parties owned multiple pieces of real property, which were allocated between them in the Judgment. The Judgment specifies in detail the disposition of

items of personal property located in the various pieces of real estate, and orders in one instance that personal property removed by Husband, from premises awarded to Wife, be returned.

Husband appealed the dissolution Judgment, arguing that in various respects it had failed to accurately reflect the parties' agreement. This Court affirmed the Judgment with limited modifications, and made the following observations concerning the existence of an enforceable settlement between the parties:

> Husband does not contend that the parties were not in agreement at the time the record was made before the trial court. He does not contend that the agreement failed to dispose of all of the material assets and debts. In fact, the record would not support such claims. Husband testified that the agreement was complete and that he knew he could not come back later and change the agreement. He said he had all the information he needed to reach the agreement and asked the court to find it fair and not unconscionable.

*Dahn v. Dahn*, 256 S.W.3d 187, 189 (Mo. App. W.D.2008).[1]

Wife filed the present action on October 9, 2007, while Husband's appeal of the dissolution Judgment was pending. As Wife has acknowledged, the present action involves the same twenty-three distribu-tion checks issued by A–1 to Wife which were the subject of discovery, and allegations in her Second Amended Petition, in the dissolution action. Indeed, Wife's Petition acknowledges that she became aware of the existence of the allegedly misappropriated checks during the dissolution action: it alleges that "Plaintiff was unaware of the issuance of the checks until approximately July 2006, when First Community Bank was ordered to produce bank statements in the divorce proceeding between plaintiff and Marcus Dahn," and that "Plaintiff had no reason to suspect the conduct of Marcus Dahn alleged herein prior to engaging in discovery and receiving the information in the divorce action in July, 2006."

In Count I of her current Petition, Wife alleges common law conversion against Husband; in Count II she alleges conversion under § 400.3–420 [2] against Husband and the Bank; in Count III she alleges breach of fiduciary duty against Husband and A–1; in Count IV she alleges negligence against A–1; and in Count V she alleges negligence against the Bank. (Wife has abandoned Count V on appeal.)

Each defendant filed a motion for summary judgment. Husband and A–1 argued that they were entitled to summary judgment because: all of Wife's claims were barred by res judicata, collateral es-

---

**1.** Following our affirmance, Wife filed motions for attorneys fees, and to enforce provisions of the dissolution Judgment as modified on appeal. The parties, including A–1 and the other Third–Party Respondents, ultimately executed a Joint Stipulation to resolve these post-judgment motions on December 31, 2008. The Joint Stipulation acknowledged that the actions specified in the Stipulation, as well as all prior actions taken by the parties, "fully satisf[y] all judgments in favor of or against all parties contained in the original Judgment of Dissolution of Marriage dated December 19, 2006, and the judgments set forth in the Court of Appeals Judgment and Opinion dated June 24, 2008." The Joint Stipulation states that "this Joint Stipulation and the mutual satisfactions of judgments included herein do not include, and specifically exclude, all claims, defenses, counter-claims, cross-claims and third-party claims alleged and pending in" the present lawsuit. The Joint Stipulation therefore does not impact any defenses Husband and A–1 may have had based on the entry of the dissolution decree itself.

**2.** Statutory references are to the RSMo 2000, updated through the 2010 Cumulative Supplement.

toppel, and the applicable statutes of limitations; her breach of fiduciary duty claim against Husband should have been asserted as a derivative action on behalf of A–1; and her claims against A–1 were barred by § 452.330. In its motion, the Bank argued that summary judgment was appropriate as to the statutory conversion claim because the checks in question were never delivered to Wife or her agent, and because the statute of limitations had run.

On September 21, 2009, the trial court sustained all defendants' motions for summary judgment. The court's Judgment does not identify the legal basis for its ruling.

Wife appeals.

### Standard of Review

■ This Court's review on an appeal from summary judgment "is essentially *de novo.*" Summary judgment is proper only if the moving party establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. This Court will review the record in the light most favorable to the party against whom judgment was entered and accords the non-movant the benefit of all reasonable inferences from the record. *Arbor Inv. Co. v. City of Hermann,* 341 S.W.3d 673, 678 (Mo. banc 2011) (citing and quoting *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc.1993)).

### Analysis

### I.

■ We first address Wife's claims against Husband and A–1. Although Wife challenges each of the grounds on which Husband and A–1 sought summary judgment in the trial court, we address only a single dispositive issue: whether Wife's claims against Husband and A–1 are barred by *res judicata.*

*Res judicata,* a Latin phrase meaning "a thing adjudicated," prohibits a party from bringing a previously litigated claim. The modern term is "claim preclusion." Claim preclusion also precludes a litigant from bringing, in a subsequent lawsuit, claims that *should* have been brought in the first suit. As such, the doctrine applies to "every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time."

Improper splitting of claims occurs when a party sues on a claim which arises out of the same "act, contract or transaction" as the previously litigated claims. A court should also consider "whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions." If the claim does arise out of the same "act, contract or transaction," the claim is barred by the original judgment under the doctrine of claim preclusion. The rule against splitting a claim for relief serves to "prevent a multiplicity of suits and appeals with respect to a single cause of action, and is designed to protect defendants against fragmented litigation, which is vexatious and costly." *Kesterson v. State Farm Fire & Cas. Co.,* 242 S.W.3d 712, 715–16 (Mo. banc 2008) (citations and footnote omitted).

■ "A claim is '[t]he aggregate of operative facts giving rise to a right enforceable by a court.'" *Chesterfield Vill., Inc. v. City of Chesterfield,* 64 S.W.3d 315, 318 (Mo. *banc* 2002) (footnote omitted). "[A] court must look to the factual bases for the claims, not the legal theories, when determining whether claims may be split." *Kesterson,* 242 S.W.3d at 716; *see also Chesterfield Vill.,* 64 S.W.3d at 320 ("Claim preclusion 'prevents reassertion of the same claim even though additional or dif-

ferent evidence or legal theories might be advanced to support it.'" (citation omitted)). The fact that a plaintiff's current legal theory may entitle the plaintiff to different relief than that available in the prior action is immaterial: "'Separate legal theories are not to be considered as separate claims, even if the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.'" *Chadd v. City of Lake Ozark*, 326 S.W.3d 98, 102 (Mo.App. W.D. 2010) (quoting *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991)). Moreover, minor factual differences between the allegations of the current and prior lawsuits are also insufficient to avoid preclusion: "In order for a subsequent claim on the same transaction to be considered separate, . . . there must be new ultimate facts, as opposed to evidentiary details, that form a new claim for relief." *Kesterson*, 242 S.W.3d at 716.[3]

*Res judicata* bars Wife's negligence, conversion, and breach of fiduciary duty claims against Husband and A–1. Wife, Husband, and A–1 were all parties to the dissolution action. Wife asserted the same "claim" in the dissolution action that she seeks to assert here, in the sense that in both cases Wife relies on the identical "aggregate of operative facts giving rise to a right enforceable by a court." *Chesterfield Village*, 64 S.W.3d at 318 (citation and footnote omitted). She alleges in the current suit that she became aware of the allegedly misappropriated distribution checks during the course of the dissolution proceedings, and the distribution checks were the subject of discovery, and allegations in Wife's operative pleading, in that earlier action. The parties' dissolution decree recited that the parties "had entered into an oral agreement on all issues" contained in Wife's Second Amended Petition, indicating that Wife had compromised the claims reasserted here in exchange for other consideration she received in the decree. The property division in the decree assigned to Husband Wife's interest in A–1, in exchange for substantial cash payments by him, and awarded Husband each of the bank accounts into which the allegedly misappropriated distribution checks had been deposited. Wife acknowledged at the hearing on the parties' oral settlement that she was "waiving any claim that [she] previously had to th[e] monies" in those accounts.

Even if the proceeds of the distribution checks could not have been located, the

---

**3.** An alternative *res judicata* test states that,

> [f]or res judicata to adhere, "four identities" must occur: 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made.

*Chadd*, 326 S.W.3d at 102 (quoting *King Gen. Contractors*, 821 S.W.2d at 501). While *King General Contractors*, and cases which continue to cite it, refer to the "identity of the thing sued for" and the "identity of the cause of action" as being separate elements of a *res judicata* defense, more recent Missouri Supreme Court cases appear to treat the "thing sued for" and "cause of action" as equivalent.

Thus, in *Chesterfield Village*, the Supreme Court observed:

> The key question is what is the "thing"—the claim or cause of action—that has previously been litigated? A claim is "[t]he aggregate of operative facts giving rise to a right enforceable by a court." The definition of a cause of action is nearly the same: "a group of operative facts giving rise to one or more bases for suing." Whether referring to the traditional phrase "cause of action" or the modern terms "claim" and "claim for relief" used in pleading rules such as Rule 55.05, the definition centers on "facts" that form or could form the basis of the previous adjudication.

64 S.W.3d at 318 (footnotes omitted).

dissolution court was empowered to afford Wife meaningful relief concerning the checks, either by ordering Husband to reimburse her for the value of this misappropriated marital property, or by imputing the value of the absent funds to Husband in any property division.[4] The parties' marital estate at the time of the dissolution judgment appears to have been substantial enough to have enabled the court to fully compensate Wife for any misappropriated marital property. While Wife's current legal theories may entitle her to different or broader relief than was available in the dissolution action, the differing legal theories, and the differing relief available, are not enough to differentiate the "claim" asserted in both actions. Moreover, to the extent Wife desired relief beyond that

available in dissolution, she was entitled to join her current tort claims, as separate causes of action, with her petition seeking dissolution of marriage.[5]

In a situation nearly identical to the one we face here, the Eastern District concluded in *Yates v. Yates,* 680 S.W.2d 361 (Mo. App. E.D.1984), that an ex-husband's later conversion claim was barred by *res judicata* based on an earlier dissolution judgment. In *Yates,* the husband alleged that his wife had sold certain farm equipment valued at $15,000 for only $6,000 during the pendency of the dissolution proceeding. *Id.* at 361. The husband filed various motions in the dissolution proceeding for relief in connection with this sale. *Id.* In addition, the husband made arguments that the below-value equipment sale should

---

4. *See In re Marriage of Rogers,* 300 S.W.3d 567, 578 (Mo.App. S.D.2009) (quoting *Dowell v. Dowell,* 203 S.W.3d 271, 279 (Mo.App. W.D.2006)):

> As a general rule, the trial court may only value and divide assets which exist as of the date of trial of the dissolution. An exception to this general principle exists where a spouse is found to have secreted or squandered marital assets in anticipation of the marriage being dissolved. In such a case the court may charge the offending spouse with the value of the secreted or squandered asset. This may be accomplished by reducing the offending spouse's share of the division of marital property or by ordering reimbursement.

*See also, e.g., In re Marriage of James,* 319 S.W.3d 456, 460 (Mo.App. S.D.2010).

5. *See State ex rel. M.D.K. v. Dolan,* 968 S.W.2d 740, 744 (Mo.App. E.D.1998) ("[T]he constitutional authority given to circuit courts to hear all civil cases includes cases which contain different counts seeking different remedies, including tort damages and dissolution of marriage. Thus, a circuit court, or a division thereof, does not 'lose jurisdiction' merely because a tort claim is joined with a dissolution count."); *see also Nebbitt v. Nebbitt,* 589 S.W.2d 297, 300 (Mo. banc 1979) (reversing dismissal of husband's claim that wife had misappropriated husband's separate property

during marriage, which husband asserted in cross-petition to wife's petition for marital dissolution); *Ray v. Wisdom,* 166 S.W.3d 592, 596 (Mo.App. E.D.2005) (reviewing partial final judgment entered on wife's claim against husband for tort committed during marriage, which was joined with count seeking dissolution).

For a discussion of the case-management considerations which may come into play where tort and dissolution claims are joined in a single action, *see M.D.K.,* 968 S.W.2d at 747; *Ray,* 166 S.W.3d at 596 (citing *M.D.K.,* and noting that "[t]his court has previously recognized that in multi-count cases such as this one, disposing of the tort count first is desirable so that the trial court can consider the evidence presented and the jury verdict on the tort count when deciding the dissolution count"). We note that, to the extent factual issues overlap between the tort and dissolution claims, the "equitable clean-up doctrine" may be relevant to determining whether the tort claims should first be tried to a jury. *See State ex rel. Leonardi v. Sherry,* 137 S.W.3d 462, 473 (Mo. banc 2004). We also note that the trial court may have the ability to limit the *res judicata* effect of any partial disposition it enters on other unresolved claims, by language excepting the unresolved claims from any partial judgment. *See Kesterson,* 242 S.W.3d at 717.

be reflected in the court's division of marital property (similar to the allegations of Wife's Second Amended Petition in the dissolution action here). The court noted that

> Both parties attempted to use the sale of the equipment as a factor in the property division; husband claiming he should be made whole by receiving a credit of one-half the value of the property sold, and wife claiming the sales were due to husband's failure to make the court-ordered payments.

*Id.* at 361–62. Despite both parties' arguments concerning the allegedly improper sale transaction, "[n]o specific findings concerning the equipment issue were requested from or made by the dissolution court in its decree." *Id.* at 362.

Following the conclusion of the dissolution proceedings, "[h]usband then commenced the present action, alleging the sale of the equipment constituted conversion." *Id.* Because issues concerning the equipment sale had been litigated in the dissolution proceeding, and because the dissolution court had entered a final judgment dividing the parties' marital property, the Eastern District held that the husband's post-dissolution conversion claim was barred by *res judicata:*

> In a dissolution proceeding, the trial court is required to determine the status, either separate or marital, of all property owned by the parties, and to dispose of it in accordance with the provisions of the statute. Section 452.330.1 RSMo (Supp.1983). The purpose is to avoid any need for future litigation. Wife was awarded $80,000 by the decree. The matter of the sale had been brought to the attention of the trial court, and the judgment is final as to the property division decreed therein. As there are no allegations of undistributed property, matters between husband and wife concerning the property are *res judicata.*

*Id.* (other citations omitted).

The Eastern District reached the same result in *Horwitz v. Horwitz,* 16 S.W.3d 599 (Mo.App. E.D.2000), in which, following the entry of a judgment dissolving the parties' marriage, the wife attempted to continue to litigate a tort claim to recover necessary expenses from husband.

> Wife's claim for necessaries should have been joined and tried with her counterclaim for dissolution of marriage. Her counterclaim sought an award of spousal maintenance and child support from the same man from whom Wife now seeks reimbursement for necessaries.
>
> . . . .
>
> Wife has clearly attempted to split her cause of action into two lawsuits. Wife's counterclaim for dissolution of marriage against Husband involves the issues of spousal maintenance, custody and child support, while her second civil lawsuit involves an action to recover necessaries expended to support herself and the children. Both arise out of the same acts or events, the marriage of Husband and Wife and the fathering of Wife's children.
>
> Moreover, both lawsuits involve the same parties, and Wife was aware of all the basic facts contained in the second lawsuit when she filed her counterclaim for dissolution. Therefore, it was incumbent upon her to plead all grounds, theories and counts in her first lawsuit. Upon entry of the judgment in the dissolution action, all of Wife's rights to remedies against Husband with respect to all or any part of the acts or events out of which the first action arose merged into that judgment. As such,

we find the trial court did not err in dismissing Wife's claim for necessaries. *Id.* at 604 (citations omitted).

The cases Wife cites to avoid the *res judicata* bar are distinguishable. In *Sotirescu v. Sotirescu,* 52 S.W.3d 1, 6 (Mo.App. E.D.2001), the court held that an ex-wife was not barred by *res judicata* from pursuing a personal-injury action for physical violence committed by her ex-husband during the marriage, despite the fact that a final judgment was entered in the parties' dissolution action during the pendency of the personal-injury case. Wife also cites to *S.A.V. v. K.G.V.,* 708 S.W.2d 651, 653 (Mo. banc 1986), and *State ex rel. M.D.K. v. Dolan,* 968 S.W.2d 740, 745 (Mo. App. E.D.1998), which both suggested—in *dicta*—that *res judicata* may not bar a post-dissolution tort claim alleging that husband's negligence during the marriage resulted in wife's contraction of a sexually transmitted disease.

Notably, each of these cases involves a wife's assertion of a personal-injury claim, rather than—as here—a claim of alleged misappropriation of marital property. The decisions note that compensation for the alleged personal injuries was an issue distinct from the matters at issue in the dissolution proceedings. Thus, *S.A.V.* recognized that "there are distinct differences between the division of marital property between spouses and awards of damages for an injury." 708 S.W.2d at 653.[6] Similarly, *Sotirescu* emphasizes that, "[i]n the instant case, Wife clearly had a cause of action sounding in tort against Husband for her allegations of abuse during their marriage that is separate and distinct from the dissolution proceeding." 52 S.W.3d at 5.

As *S.A.V.* and *Sotirescu* recognize, the connection between a division of marital property in a dissolution action, and a spouse's claims of physical abuse or other tortious personal injury, is limited and inexact. While one spouse's commission of a tort against the other may constitute marital misconduct which can influence a division of marital property under § 452.330.1(4), in order to affect a property division misconduct must "change[ ] the balance so that the [innocent] spouse is burdened with a greater share of the partnership load." *Lindsey v. Lindsey,* 336 S.W.3d 487, 496 (Mo.App. E.D.2011); *see also Hight v. Hight,* 314 S.W.3d 874, 879 (Mo.App. S.D.2010) (although the added burden placed on innocent spouse " 'does not have to be a financial one,' " holding that " '[t]here must ... be evidence of the specific added burdens the non-offending spouse is claiming he or she suffered as a result of such misconduct.' " (quoting *Ballard v. Ballard,* 77 S.W.3d 112, 117–18 (Mo.App. W.D.2002))). "Not all marital misconduct, however, requires a disproportionate division of marital property," and "[e]ven if the court believes the evidence of misconduct, it can still divide the property in equal fashion." *Seggelke v. Seggelke,* 319 S.W.3d 461, 466–67 (Mo.App. E.D. 2010). Moreover, even where a dissolution court adjusts the spouses' relative distributions of marital property based on a finding of misconduct, the relationship between any tortious conduct and the court's property division will necessarily be imprecise, given the dissolution court's considerable discretion in such matters, and given

---

**6.** This statement in *S.A.V.* comes from a three-judge plurality opinion. Judge Blackmar's concurring opinion specifically states that "I express no opinion as to how a court should rule if a spouse suffers the termination of a dissolution action without mentioning a possible tort claim and then files suit." 708 S.W.2d at 653–54. Thus, any discussion of *res judicata* issues in the *S.A.V.* plurality opinion is of questionable precedential value, quite apart from its status as *dicta.*

that marital misconduct is merely one of several factors relevant to a division of marital property.

■■■ Thus, the statements in *Sotirescu*, *S.A.V.*, and *M.D.K.*, that *res judicata* may not bar a post-dissolution personal-injury action, reflect the limited connection between personal-injury claims and the issues in a dissolution action.[7] Wife's claims in the present action stand on a different footing, however, since they involve allegations that Husband mishandled the parties' marital property itself. Along with the resolution of issues of child custody and support and spousal maintenance, the division of marital property is one of the core functions of a dissolution court. Section 452.330.1 directs that the court "shall divide the marital property and marital debts in such proportions as the court deems just," and caselaw holds that a trial court has not fully and finally resolved a dissolution proceeding until it has addressed all known marital property and debt. *See, e.g., In re Marriage of Nardini*, 306 S.W.3d 165, 170–71 (Mo.App. S.D. 2010); *Rogers v. Rogers*, 253 S.W.3d 134, 136–37 (Mo.App. W.D.2008). Moreover, as we have discussed above, a dissolution court has the authority to order meaningful relief which directly addresses claims by one spouse that the other spouse has misappropriated marital property, even if that marital property cannot itself be located at the time of entry of a dissolution judgment.

It is also significant that Wife's present claims—that Husband wrongfully appropriated distributions from A–1 and deposited those distributions into his personal accounts, and that she was entitled to compensation for his actions—would necessarily alter the division of marital property to which the parties had agreed prior to entry of the dissolution decree. In the parties' final dissolution judgment, Wife gave up any interest in A–1, and in the bank accounts into which the checks were deposited, and received substantial other property in resolution of the claims asserted in her Second Amended Petition. The fact that Wife's present claims amount to a collateral attack on the dissolution judgment's division of marital property constitutes a further reason for applying *res judicata* principles here. Unlike the statutes governing child custody (§ 452.410), child support (§ 452.370), and spousal maintenance (§§ 452.335.3, 452.370), the legislature has expressly declared, in two separate statutory provisions, that the provisions of a dissolution decree effecting the distribution of marital property shall be final and non-modifiable in all cases. § 452.330.5 ("The court's order as it affects distribution of marital property shall be a final order not subject to modification[.]"); § 452.360.2 ("The court's judgment of dissolution of marriage … as it affects distribution of marital property shall be a final judgment not subject to modification."). These statutory provisions reflect a legislative determination that issues concerning the division of marital property be fully and finally resolved in the dissolution proceeding itself. *See Morgan v. Morgan*, 249 S.W.3d 226, 232–33 (Mo.App. W.D.2008) (trial court may not employ measures such as ordering indemnification or imposing resulting trust to compensate wife for husband's post-dissolution waiver of a portion of his military retired pay, a share of which had been

---

7. Of course, even though *res judicata* may not act as a complete bar to the prosecution of a post-dissolution personal-injury action, entry of a prior dissolution decree may have collateral estoppel effect in the later suit, to the extent specific overlapping issues exist between the dissolution and tort proceedings; moreover, issues may arise as to whether a prior dissolution decree resulted in compensation, in whole or in part, for the injured spouse's personal injuries. *See M.D.K.*, 968 S.W.2d at 746–47.

allocated to wife in dissolution decree); *Schaffer v. Haynes*, 847 S.W.2d 814, 816–17 (Mo.App. E.D.1992) (trial court does not have authority to modify distribution of marital property contained in final dissolution decree based on mutual mistake of fact).

For these reasons, and consistent with the *Yates* and *Horwitz* decisions discussed above, we believe the application of *res judicata* principles to Wife's current claims against Husband and A–1 is appropriate, and involves a fundamentally different situation from that presented in *Sotirescu*, *S.A.V.*, and *M.D.K.*

 Wife also cites *Wood v. Wood*, 716 S.W.2d 491 (Mo.App. S.D.1986), in which the court held that a former wife could file a separate post-dissolution claim for her ex-husband's alleged fraudulent misrepresentations that no marital property existed. *Id.* at 493; *see also Karney v. Wohl*, 785 S.W.2d 630, 633 n. 3 (Mo.App. E.D.1990) (recognizing wife's right to sue, post-dissolution, for husband's fraudulent pre-dissolution misrepresentations concerning existence of marital property). However, in those cases, the complaining party was not aware of the property at the time of the dissolution, and the disposition of the property at issue was not addressed in the dissolution proceeding or decree, for the simple reason that one spouse had (allegedly) fraudulently represented that the property did not exist.[8] Here, by contrast, Wife was plainly aware of the allegedly misappropriated distribution checks, alleged a claim concerning these checks in her operative pleading, and conducted discovery concerning their disposition. This case is wholly unlike *Wood*.[9]

Because Wife's claims against Husband and A–1 are barred by *res judicata*, we affirm the circuit court's grant of summary judgment to them.

## II.

 We now turn to Wife's conversion claim against the Bank. Although Wife's brief challenges both of the grounds on which the Bank sought summary judgment, we once again find a single issue to be dispositive: whether Wife ever received delivery of the distribution checks, thus entitling her to assert a conversion claim against the Bank.[10]

---

8. In a similar vein, courts have held that the finality of divisions of marital property does not foreclose a separate post-dissolution action in equity concerning the disposition of property omitted from a dissolution decree. *See, e.g., May v. O'Roark*, 329 S.W.3d 410, 413–14 (Mo.App. W.D.2011).

9. Wife also cites *Nebbitt v. Nebbitt*, 589 S.W.2d 297 (Mo. banc 1979), in which the Supreme Court held that a husband could prosecute, post-dissolution, a claim for wife's alleged conversion of his separate property during the pendency of the dissolution proceedings. *Id.* at 300. *Nebbitt* observes that "[w]hether the petitioned-for divorce is granted or denied does not affect the right to sue for conversion." *Id. Nebbitt* involved the husband's *non-marital* property, while this case concerns alleged misappropriation of *marital* property. As we have explained in the text, a dissolution court has wide-ranging authority to address issues concerning the parties' mar-

ital property. By contrast, "[a] court has no authority acting on its own to divide separate or nonmarital property and in fact commits *prima facie* error when it awards a spouse a partial interest in the other spouse's nonmarital property." *In re Marriage of Medlock*, 990 S.W.2d 186, 188 (Mo.App. S.D.1999) (citing *Rich v. Rich*, 871 S.W.2d 618, 627 (Mo.App. E.D.1994)). As with personal-injury claims, the dissolution court's more limited authority over non-marital property justifies different *res judicata* treatment than with respect to claims concerning marital property.

10. The Bank did not argue in the trial court, and does not argue on appeal, that it is entitled to summary judgment based on *res judicata*. Although we need not decide the issue, it appears that a *res judicata* defense would not have been available to the Bank, given that it was not made a party to the dissolution action. *See Spath v. Norris*, 281 S.W.3d 346,

Wife's conversion claim is based on § 400.3–420, which provides in relevant part:

(a)The law applicable to conversion of personal property is applicable to instruments.... An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

The official comment to this section explains the reason for inclusion of the delivery requirement in § 400.3–420(a)(ii):

Until delivery, the payee does not have any interest in the check. The payee never became the holder of the check nor a person entitled to enforce the check. Section 3–301. Nor is the payee injured by the fraud. Normally the drawer of a check intends to pay an obligation owed to the payee. But if the check is never delivered to the payee, the obligation owed to the payee is not affected. If the check falls into the hands of a thief who obtains payment after forging the signature of the payee as an indorsement, the obligation owed to the payee continues to exist after the thief receives payment. Since the payee's right to enforce the underlying obligation is unaffected by the fraud of the thief, there is no reason to give any additional remedy to the payee....

The situation is different if the check is delivered to the payee. If the check is taken for an obligation owed to the payee, the last sentence of Section 3–310(b)(4) provides that the obligation may not be enforced to the extent of the amount of the check. The payee's rights are restricted to enforcement of the payee's rights in the instrument. In this event the payee is injured by the theft and has a cause of action for conversion.

The payee receives delivery when the check comes into the payee's possession, as for example when it is put into the payee's mailbox. *Delivery to an agent is delivery to the payee.* If a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees.

(Emphasis added.)

Wife acknowledges that she did not receive actual delivery of the checks; indeed, as noted above, Wife's petition alleges that she did not even become aware of the existence of the checks until several years later, during discovery in the dissolution action. Instead of alleging actual delivery, Wife claims that Husband, acting as her agent with apparent authority, received the checks on her behalf.

Wife's claim that Husband acted with apparent authority as her agent is defeated by her own allegations. Wife's petition alleges that Husband was A–1s President, "responsible for the management and affairs of A–1." The petition goes on to allege that, "[c]ommencing on July 22, 2000[,] [Husband] caused to be issued distribution and payment checks to [Wife]," and that the checks "were issued at the instance of [Husband] by A–1 Alarms, Inc. without the knowledge of [Wife]." Wife alleges that "[Husband] took possession of the above referenced checks with the intent to exercise control over the checks," and that his actions in doing so "were intentional and malicious and exercised with the intent to violate the rights of plaintiff." Each of the allegedly misappropriated checks was executed by Husband on behalf of A–1.

351 (Mo.App. W.D.2009) (citing *Hollida v. Hollida*, 190 S.W.3d 550, 556 (Mo.App. S.D. 2006)); *Taylor v. Compere*, 230 S.W.3d 606, 610 (Mo.App. S.D.2007).

Thus, according to the allegations of Wife's petition, Husband caused the checks to be issued, without Wife's knowledge, with the malicious intent to wrongfully exercise control over the checks although they rightfully belonged to Wife.[11] Wife now claims that, although Husbands actions were unauthorized, he acted with the apparent authority to receive the checks on her behalf. But Husband—who was the recipient of the checks—was also the person issuing the checks for A–1. To the extent his actions were actually wrongful and unauthorized, he would have been aware of this fact, as the President of A–1, at the time A–1 issued the checks.

As the comment to § 400.3–420 makes clear, the agency issue must be viewed from the perspective of the party issuing an instrument. If the issuer delivers the check to the payee, or to the payees agent, the issuer has discharged its underlying obligation to the payee, and the payees remedies for a misappropriated check lie against the thief. If, however, the issuer fails to deliver the check to the payee or the payees agent, then the issuer remains liable to the payee on the underlying obligation, and the payee has no right to also assert a conversion claim.

Here, A–1s alleged complicity in Husbands misappropriation of the distribution checks defeats any claim of apparent authority.

> To establish the apparent authority of a purported agent, [a litigant] must show that
>
> (1) the principal manifested his consent to the exercise of such authority or knowingly permitted the agent to assume the exercise of such authority;
> (2) *the person relying on this exercise*

> *of authority knew of the facts and, acting in good faith, had reason to believe, and actually believed, the agent possessed such authority;* and
> (3) the person relying on the appearance of authority changed his position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal.

*Motorsport Mktg., Inc. v. Wiedmaier, Inc.,* 195 S.W.3d 492, 498 (Mo.App. W.D.2006) (emphasis added; citation omitted). "Apparent authority exists only to the extent that it is reasonable for a third person dealing with the agent to believe that the agent is authorized." *Corrington Park Assocs., L.L.C. v. Barefoot, Inc.,* 983 S.W.2d 210, 213 (Mo.App. W.D.1999).

Here, under the allegations of Wife's petition the issuer of the distribution checks A–1 could not have believed Husband had apparent authority to act on Wife's behalf. According to those allegations, Husband caused A–1 to issue the distribution checks with the intent to wrongfully take possession of them in violation of Wife's rights. To the extent this action was unauthorized and wrongful (*see supra* note 11), A–1 was aware of it, and could not have actually acted on a good-faith belief that Husband had authority to deal with the checks in a manner Wife had not approved, and in violation of her rights. In connection with Husbands dealings with A–1 concerning the distribution checks, Wife cannot successfully contend that he acted as her agent with apparent authority. Given that neither Wife, nor any agent of hers, received delivery of the checks, her conversion claim against the Bank is defeated by § 400.3–420(a)(ii).

11. We note that, in his deposition in the dissolution action, Husband testified that Wife was aware of, and approved, his handling of the distribution checks, and that his treatment of the checks was consistent with the parties' long-standing practices. Of course, if that were the case, Wife would have no claim for conversion by Husband's taking control of the checks and depositing them in his personal bank accounts.

## Conclusion

The judgment is affirmed.

All concur.